Lamb, ex'r, *vs.* Girtman *et al.*

---

DAVID LAMB, executor and propounder, plaintiff in error, *vs.* MARY GIRTMAN *et al.*, caveators, defendants in error.

1. When the testator signs his will in the presence of the subscribing witnesses, and retires to an adjoining room, and lies-down, and the witnesses subsequently signed as subscribing witnesses: *Held*, that the presumption is, that they did not subscribe in presence of the testator, and that this presumption must be rebutted by proof before the will can be set up.

2. The recognition by the witnesses at a subsequent day, in the presence of the testator, that the signatures to the will were their own, is not a compliance with the law, and does not cure the original omission.

Appeal from Court of Ordinary of Jefferson county. Tried before Judge HOLT, at October Term, 1860.

A paper, purporting to be the last will of Andrew Girtman, was propounded for probate by David J. Lamb, the executor therein named, before the Court of Ordinary of Jefferson county, at July Term, 1857, and a caveat entered thereto by Mary Girtman and others, on various grounds, two of which are only necessary to be here stated. The first is, that the will was not properly executed, the subscribing witnesses not having signed it in the presence of the testator, and the second, that the third and sixth items of the will are void, as being in conflict with the Act of 1818, against manumission, etc. These items are as follows:

ITEM 3d. I give and bequeath to my friend, John S. Bell, my seven negroes, to-wit, (naming and describing them,) to him forever.

ITEM 6th. I direct that my executor pay to John S. Bell two hundred dollars, for the purpose of defraying any expenses which he may incur in taking care or providing for

the negroes mentioned in the third item, in carrying out my desire in said item.

The case was taken by appeal to the Superior Court. On the trial the testimony of the subscribing witnesses and others, introduced by the propounder to sustain the due execution of the will, is stated by Judge Holt, in his decision granting a new trial, which will be found below.

It was also proved by the propounder that some fifteen days after the will was signed, the testator recognized it as his will, and had the same sealed up, procuring the subscribing witnesses to write their names across the seals, and delivered the package to one of them to be given to the Ordinary, giving as a reason for this that he was afraid to keep the will by him, as he had some " hot-headed kin."

The evidence bearing upon the point of manumission is as follows:

ZACH. L. BROWN, a subscribing witness, testified: Testator said he had given the negroes to John S. Bell; that he gave the negroes the privilege of choosing their owner, and they had selected Dr. Bell; that he once thought of freeing them, but Esquire Spier told him he could not do it by will; that he could not manumit in Georgia, and the negroes did not want to go off; that Bell was an honorable man; he knew the negroes were subject to Bell's debts, but he did not believe he would have them sold; he had confidence in him, and believed he would carry out his will, purpose or design; can't say which word was used by testator. If he, Bell, did not, it would damn him in the community. Dr. Bell was not there.

SPENCER G. SPIVEY, a subscribing witness, says: I saw Bell one day, and said to him, "the negroes, as they now stand, are subject to your debts." Bell replied, "I will fix that." Bell was seen twice by me after the execution of the will. Testator suggested a change in his will; he would change his executor. Bell stated it could not be done without making a new one. Testator said nothing more.

JAMES S. SPIER, another attesting witness, testified: Testator said he thought it right to give something to whom-

Lamb, ex'r, *vs.* Girtman *et al.*

soever took the negroes, as compensation for his trouble, that he did not want him burthened for nothing. It was remarked that as the gift stood, the negroes might be taken for Bell's debts, and testator said he had more confidence in Bell than to believe he would let that be done, for if he did, and did not carry out his will, it would damn him in the settlement.

Propounders also proved by ROBERT W. DANIEL and JAMES GRIFFIN, who testify that they were not present at the attestation, but have visited the house since, and if the table on which the will was signed was in the centre of the side of the room in which it was, or near the centre and the head of the bed in the bed room sat within two to four feet of the partition, then, in their opinion, if testator was lying with his head to the head of the bed, he could see the table on which will was executed. Don't know that the table and bed were in same position when seen by us as they were at the time of attestation.

Evidence was introduced by caveators, but it has no bearing on the two grounds relied on.

After being charged by the Court, the jury returned a verdict in favor of the propounder, and caveators moved for a new trial, on the grounds stated in the decision, made by Judge Holt, after argument had on the motion. The decision was delivered at the October Term, 1861. On the 19th April, 1861, the following agreement was entered into by counsel for propounder and caveators:

Counsel being unable to agree upon the brief of testimony, it is ordered, by consent, that the brief of evidence prepared by counsel for caveators, with the objections and addditions made by counsel for propounder, upon the margin thereof, be submitted to the Court, and upon his decision upon the conflict, it shall constitute the brief of evidence in this case.

### JUDGE HOLT'S DECISION.

The paper offered as the will of Mr. Girtman was opposed on several grounds, but those chiefly relied upon by the caveators, were two: first, the want of its legal execution, and secondly, its illegality, by reason of the attempt which was

therein made indirectly to manumit slaves, and the jury having found in favor of the will, the Court is moved for a new trial, upon the allegations that the verdict is contrary to law and evidence.

The objection to the execution of the will is, that the attesting witnesses did not subscribe in the presence of Mr. Girtman, the testator. Attesting and subscribing by witnesses, in the presence of the testator, are essential to the validity of the will, and this must be shown to have been done, else the will shall be held to be void and of none effect. Ths is positive statute law that cannot be set aside or dis regarded. We have the evidence of the subscribing witnesses, and from them we learn that the testator was a man sixty or seventy years old, in feeble health, and weak, though he could sit up and walk about; that he had no wife or child, and was very anxious to make a will, and for this purpose called around him the subscribing witnesses, one of whom wrote the will; that the strong desire he had to make a will was on account of his slaves, whom he wished to manumit, but on being told that he could not legally do that, then to leave them to whomsoever the negroes might choose; that the will was read to and fully approved by him, and everything done by him, and those assisting him, which was deemed by them to be necessary to its valid execution. But was every thing done by them, and were they not mistaken as to what was necessary to have been done? is the important question before the Court. The concurring testimony of the subscribing witnesses is that the testator executed the will sitting at his table, in the hall or common sitting room, and in the presence of witnesses; that when he had signed the paper he got up and said, "you have done with me now, I am weak, and will go and lie down;" that he retired to a bed in his room, which adjoined the hall, and was accompanied by one of the party, who afterwards subscribed as a witness; that nothing further was done in the matter until he who accompanied him to his bed-room returned; that then they all subscribed the will in the presence of each other; that about fifteen minutes after the witnesses had subscribed, the testator was seen lying on his bed

with his head towards the head of the bed, in the ordinary way that men lie, and as he had. been seen lying some hours before in the same bed, by one of the witnesses, and .in that position he could not have seen the act of attestation.

There was no evidence, that from the time his friend who accompanied him to his bed left him, he was ever, while the business was being transacted, in any other position, and the conduct, at that time, of the subscribing witnesses and of Mr. Lamb, the propounder of the will, has some weight in addition to the facts testified to, upon the question of presence, which we are considering. It was thought by them that they ought to subscribe in the presence of each other, and therefore they delayed the act of subscribing until the return of him who accompanied the testator to his bed room, but no longer, and then they immediately subscribed in the presence of each other, while the testator lay in his bed in an adjoining room, from which he could not see what was done by them. Nor did he, or his friends who were assisting him, seem to consider it important that he should see or be able to see, for when the testator had signed the will in their presence he said, "you have done with me now," to which they assented by accompanying him to his bed, though they delayed to subscribe until all the witnesses were present and they could subscribe in the presence of each other. But the mistake of the law cannot alter the law. It is true that it is not necessary for the testator to have actually seen the witnesses subscribe, but it was necessary that they should have subscribed in his presence, that it must have been done before him or in his view, so that if he would have looked from his actual position he might have seen them subscribe. What was his position at the moment of subscribing is not known, but it is known that just before, he was assisted to his room by reason of his weakness and for the purpose of rest, where fifteen minutes after, he was seen lying in the same position as that in which he had been seen in the same bed some hours before, and in the ordinary way in which men lie in their beds for rest, and that from the position in which he then was, he could not have seen the witnesses subscribe. To counteract

this proof it should have been shown that the testator actually assumed such position in his bed, as to bring the witnesses, when subscribing, within his view, not that he might have done so; nor can the strong testimony of the subscribing witnesses, who knew how things really were at the time, be countervailed by the testimony of witnesses long afterwards taken to the room, to be prepared to testify to a supposed state of things. Upon this point, therefore, of a defective execution of the will, the Court cannot doubt as to the propriety of granting a new trial, and as the case will again come before the Court for another trial, when not only the validity of the whole will must be tried, but the legality of particular clauses be determined, the Court abstains now from the expression of any opinion on the latter subject. Let the verdict be set aside and a new trial be granted."

Counsel for propounder excepts to this decision, alleging it to be error.

The case was brought up to the last January Term of this Court, and a dimunition of the record being suggested, was sent back to have the same corrected. In the interim, namely, on the 15th of February, 1862, Judge Holt made the following note on the bill of exceptions:

The counsel in this case not being agreed as to the testimony filed, I stated the case as made by the proofs correctly in my decision, as I believe, without correcting the brief of the evidence; but having understood that the Supreme Court looks to the brief, and not the decision, for the facts of the case, I have corrected the brief.

It was contended by counsel for plaintiff in error that the Judge could not correct the brief of testimony after it had passed out of his hands, and that counsel had the right to use in this Court the brief as it was before the corrections of Judge Holt.

WILKINS, for plaintiff in error.

SHEWMAKE, for defendant in error.

Lamb, ex'r, *vs.* Girtman *et al.*

*By the Court*—LYON, J., delivering the opinion.

1. The question before the jury was, whether the will was signed by the subscribing witnesses in the presence of the testator, as required by the Act of 1st January, 1851, pamphlet, page 104? At the time of their attestation the testator was in a different room to that in which the will was signed by the witnesses. That fact raised a presumption, that they, the witnesses, did not sign in his presence. Lamb vs. Girtman, S. C., 26th Georgia, 630. And this presumption was not overcome, (which was necessary) by any evidence on the trial; but on the contrary, it was strengthened, and made almost conclusive by the evidence. We will not discuss the evidence, as that labor has been saved to us by the able and searching exposition of the Judge who tried the cause, whose decision we endorse and adopt as our own. Let it speak for itself.

2. The subsequent recognition by the witnesses of their signatures to the testator's, does not help the case for the propounder of the will. This is not a signing in the presence of the testator and of each other, and if we should dispense with one recognition of the statute we might with another, until the whole object of the statute, whatever that is, should be defeated. This we are not inclined to do, but choose rather to adhere to the statute as it is, and in doing so, know that we cannot err.

Let the judgment be affirmed.