## In the Matter of Downie's Will.

Wills. *(1) Subscription. (2) Attestation. (3) Costs of litigation.*

1. Under our statute, which requires that a will (not nuncupative), to be valid, "shall be attested and subscribed *in the presence of the testator*, by two or more competent witnesses," no subscription to a will by a witness is valid unless made where the testator (if he so desires, and is not blind) can see the witness subscribe; and it is not sufficient that the witness, *after* signing as such in an adjoining room outside of the testator's range of vision, brings such subscription to the attention of the testator, who assents to and approves the act.
2. Where one of the two persons who signed their names as witnesses to a will, was ignorant of the nature of the instrument, *quære,* whether there was a sufficient *attestation* under the statute.
3. Upon confirming a judgment of the probate court, refusing probate of an instrument propounded as a will, this court directs the *costs* of the litigation to be paid out of the estate, the proponents having acted in good faith, with probable cause.

APPEAL from the Circuit Court for *Walworth* County.

An instrument in writing, purporting to be the last will and testament of Timothy C. Downie, deceased, was presented for probate to the county court, and probate thereof was refused on the sole ground that the instrument was not attested and subscribed in the presence of the testator by two witnesses. *Helen D. Devendorf*, who is named therein as a legatee, appealed to the circuit court from the order of the county court refusing to admit the instrument to probate. The matter was heard on the same evidence introduced on the hearing in the county court; and the circuit court reversed the order and determination of the county court, and ordered and adjudged that such instrument be admitted to probate as the last will and testament of the deceased.

The material facts, about which there is no controversy, are briefly these: A few hours before his death, the deceased requested one Watson to write his will; and thereupon Watson wrote the instrument in question (the words of it being dic-.

tated by the deceased), and read it over to him; and he signed it
in the presence of Watson alone.   Watson then asked whether
he should sign it.   The deceased made no response, but called
his brother, George H. Downie (who was near, probably in an
adjoining room), and requested him to witness a paper.   George
then signed the instrument in question as a witness, in the
room where the deceased was, and in his immediate presence,
and Watson put the instrument in his pocket.   George testi-
fied that he did not know the character of the paper at the
time he signed it.   After affixing his signature, George went
into the adjoining room, to which Watson followed him a few
minutes later.   Very soon after Watson went into the ad-
joining room, George asked him whether the instrument
was simply a request, and the latter replied that it was a will.
George asked him whether he (Watson) had signed it, and he
answered that he had not.   George then remarked that a will
requires two witnesses, and went into the room where the de-
ceased was, and asked him whether Watson had " witnessed the
paper."   Deceased said he had.   George thereupon returned
to the adjoining room, told Watson what deceased said, and
advised him to witness the instrument, and he did so.   Wat-
son affixed his name to the instrument in the room adjoining
that in which the deceased was, and the latter could not see
the act of signing from the bed on which he was lying.   Wat-
son then went into the other room, sat on the bed of the de-
ceased, with the instrument in his hand, and said to deceased
that he had signed it, as he supposed, in accordance with his
wishes; and deceased replied that it was all right.

Deceased had been sick less than a week at the time, and
was then unable to rise from his bed.   The transactions above
detailed probably occupied less than half an hour.   They oc-
curred after midnight, and the deceased died at eight o'clock
the same morning.

*Leonard E. Downie*, the father and sole heir-at-law of the
deceased (the latter having left no issue or widow surviving

him), appealed from the order or judgment of the circuit court directing that the will be admitted to probate.

*A. D. Thomas*, for the appellant, contended that Watson did not attest and subscribe the alleged will in the presence of the testator, as required by the statute. In support of this view, he argued, 1. That the attesting and subscribing by the witnesses must take place within the testator's range of view, so that he may see the act of subscribing, if he wishes, without a material change of his position; and that he must be mentally observant of the act while in progress. *Doc v. Manifold*, 1 Maule & Sel., 294; 1 Redf. on Wills (3d ed.), 203, 205, 246 et seq., and cases cited in the notes; 1 Cooley's Black. (2d ed.), 367, 377, and notes; 2 Greenl. Ev. (2d ed.), 636, 637, and notes; *Hill v. Barge*, 12 Ala., 687; *Robinson v. King*, 6 Ga., 539; *Lamb v. Girtman*, 26 id., 625; 33 id., 289; *Wright v. Lewis*, 5 Rich., 212; *Ray v. Hill*, 3 Strobhart, 297; *Rucker v. Lambdin*, 20 Miss. (12 S. & M.), 230; *Watson v. Pipes*, 32 id., 451; *Graham v. Graham*, 10 Ired. Law, 219; *In re Cox's Will*, 1 Jones' Law, 321; *Howard's Will*, 5 Mon., 199; *McElfresh v. Guard*, 32 Ind., 408; *Aikin v. Weckerly*, 19 Mich., 482; *Ruddon v. McDonald*, 1 Bradf., 352; *Dewey v. Dewey*, 1 Met., 349. 2. That a witness cannot subscribe or attest a will in the absence of the testator, and afterwards acknowledge his signature to the testator, so as to make the will valid under our statute. Such is the plain provision of the statute, which ought not be departed from by the court for the sake of any supposed equity (6 Barn. & Cress., 675; 6 Ad. & El., 7); and such also is the overwhelming weight of the decisions, both in England and this country. See especially *Hindmarsh v. Charlton*, 8 H. of L., 160; *Chase v. Kittredge*, 11 Allen, 48; 1 Redf. on Wills (3d ed.), 246, note; *Reynolds v. Reynolds*, 1 Speers, 253. See also *Pope v. Ex'rs of Pope* (unreported), Vt.; *Den v. Milton*, 7 Halst., 70; *Combs v. Jolly*, 2 Green's Ch., 625; *Mickle v. Matlack*, 2 Harrison, N. J., 86; *Ragland v. Huntingdon*, 1 Ired., 561;

*Graham v. Graham* and *In re Cox's Will, supra; Edelen v. Hampson*, 7 H. & J. (Md.), 64; *Boldry v. Parris*, 2 Cush., 433; *Lamb v. Girtman, supra; Duffie v. Corridon*, 40 Ga., 122; 32 Miss., 467–8; *Rash v. Purnel*, 2 Harring., 458.    3. That even if the witness could subscribe the will in the absence of the testator, and afterwards acknowledge his subscription to the testator, the pretended acknowledgment by Watson in this case was not sufficient, he having merely gone into the testator's room and told the testator that he had signed the will, without even calling his attention to the fact that the paper folded up in his hand was the will in question, and without opening such will, or showing the testator its contents or his signature, or in any manner identifying his signature or the will.    Even the case of *Sturdivant v. Birchett*, 10 Gratt., 67 — which was an extreme authority, by a divided court, and against the current of decisions in England and America,— does not go to the extent of upholding such a subscription.

*H. F. Smith*, for the respondent, contended that the statutory requirement that a will shall be subscribed by the witnesses in the presence of the testator, should be governed by the same rule of construction that is applied to all other statutory requirements pertaining to the execution of wills; and that, in respect to all such requirements, the authorities are numerous, and apparently free from conflict, that a literal compliance need not be shown; that a substantial compliance is all that is necessary; and that if the object of the statute is attained, nothing further is required.    6 Hun, 279; 4 Coms., 140, 144; 1 Kern., 226; 23 N. Y., 9; 25 id., 422; 27 id., 9; 33 id., 619; 36 id., 416; 52 id., 125; 3 Barb. Ch., 158; 2 Barb. S. C., 200, 385; 10 id., 608; 2 Bradf., 261, 295; 3 id., 353; 8 Paige, 488; 26 Wend., 325; 1 Redfield on Wills, 202, pl. 1; 203, pl. 2, 3; 208, pl. 8; 227–8, pl. 32; 229–230, pl. 1; 165–6, pl. 2.    He also urged the following propositions:    1. The statutory provision in question is designed exclusively for the benefit of the testator.    2. The person for whose benefit

or protection a statutory or even a constitutional provision is made, may renounce or waive it. *People v. Murray*, 5 Hill, 468; *Lee v. Tillotson*, 24 Wend., 337; *Baker v. Braman*, 6 Hill, 47; *Embury v. Connor*, 3 Coms., 511; *Van Hook v. Whitlock*, 26 Wend., 43, affirming 7 Paige, 373; *Heyward v. Mayor*, etc., 8 Barb., 486. 3. The English authorities all hold that it is not necessary for the testator to see or even know that the witnesses subscribe the will; that it is sufficient if the act be done in the line of his vision; that if he is blind, he shall be presumed to see; and that if he is not blind, he need not see. 1 Redfield on Wills, 245-6, pl. 3. Under these authorities, the subscription may be made without the slightest knowledge of the testator, and by persons whom he would never have chosen or consented to as witnesses. This rule lets go the substance and grasps the shadow; it leaves the door wide open for fraud. Such is not the case with the rule requiring a *substantial compliance*. 4. To attest a will is to witness its execution, that is, to witness the signing by the testator. The requirement that the witnesses shall attest the will in the presence of the testator, involves, therefore, the requirement that the testator shall sign the will in their presence. But all the authorities concur that it is not necessary for the witnesses to be present at the execution of the will by the testator; that his admission to them that he has signed it, or any recognition by him in their presence that the instrument is his will, is equivalent to his signing the will in their presence. 1 Redfield on Wills, 218–220, pl. 16. If the testator's admission to the witnesses that he has signed the will, gives to his signing out of their presence the same effect as if he had signed in their presence, then the like acknowledgment to him by the witnesses must give the same effect to their signing out of his presence. 1 Redfield on Wills, 229–231, pl. 3, and note 9; 4 Am. Law Reg., N. S., 735, and Judge Redfield's comments on pp. 741-2, and cases there cited. It is more important that the witnesses should be present at the

execution of a will, than that they should subscribe in the presence of the testator. It is their peculiar business to see the testator execute the will, in order that they may testify to that fact and to the testator's mental capacity at that time. The subscription by the witness is merely his certificate that he has witnessed the execution of the will by the testator; and it may as well be made at any subsequent time, and out of the testator's presence, provided the witness knows that he has subscribed the same will he saw the testator sign. Yet all the authorities dispense with the presence of the witnesses at the execution of the will. 5. The right to dispose of one's property by will is a natural right, though subject to limitation by statute. The only design of such statutes is, to shield the right from fraud and imposition. They should therefore be construed, so far as possible, in such a manner as to allow a free and full exercise of the right; and a substantial compliance with the statute, that is, such a compliance as under the circumstances of the case makes it reasonably certain that no fraud or imposition upon the testator has been perpetrated, ought to be held sufficient. *Remsen v. Brinckerhoff*, 26 Wend., 325, 332–3. 6. There was no room for Watson to be mistaken. The instrument was in his handwriting and in his possession, and he had just seen the testator sign it. Within the intent and meaning of the law, and the ordinary understanding of mankind, he subscribed in the testator's presence. Immediately after subscribing, also, he stated the fact to the testator, who said it was all right. The testator desired him to be one of the subscribing witnesses, was fully aware that he had subscribed, and was entirely satisfied; and his testamentary intentions expressed in the will ought not to be defeated.

Lyon, J. There can be no doubt that when the deceased signed the instrument propounded as his last will and testament, and when the signatures of his brother George and

Watson were appended to it, he was of sound disposing mind and memory. Neither is there any reason to doubt that the instrument expresses his real intention in regard to the disposition of his property after his death; and the record discloses no ground for suspecting that any injustice would be done to his heir-at-law, should the instrument be established as his last will. Indeed, the case is singularly free of those extraneous circumstances often present in such cases, which force the mind, however reluctantly, to contemplate possible wrong and injustice as the result of applying in its integrity a given rule of law. In such cases, impelled by what has seemed to them a persuasive justice, and with an exalted sense of the obligations which the deceased owed to his relatives or others, the courts have sometimes strained the law to make a will what it ought to be, rather than to execute the will of the testator as he made it. And so, likewise, wills have been denied probate, or admitted thereto, on grounds which would not have prevailed had the specific provisions of the instrument been disregarded. Such cases have tended to unsettle otherwise well settled rules, and have furnished many illustrations of the legal proverb, that "hard cases make bad law."

The statute we are to interpret is as follows: "No will made within this state, except such nuncupative wills as are named in the following section, shall be effectual to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in writing, and signed by the testator, or by some person in his presence and by his express direction, and attested and subscribed in the presence of the testator, by two or more competent witnesses." R. S., ch. 97, sec. 5.

The question presented by this appeal is, Did Watson subscribe the instrument propounded as the last will and testament of Timothy C. Downie, in the presence of said Downie, within the meaning of the statute?

The provision of our statute which makes it essential to the

validity of a will that it shall be attested and subscribed by witnesses in the presence of the testator, is taken from the English statute of 29 Car. II, c. 3, § 5, which has also been adopted without material change (except as to the number of witnesses required) in most of the states of the Union.

The learned counsel for the respondent concedes that the English courts have uniformly held that unless the instrument be subscribed by the attesting witnesses in the conscious presence of the testator — that is, unless he may, if he choose, see the act of subscribing,— it is not a subscribing in his presence within the meaning of the statute. An exception to this rule is made of necessity in case the testator is blind; but in such case it is held that the subscribing must be where the testator could see the act if he were not blind.

But the counsel claims that there is a conflict on the subject in the adjudications of the American courts and in the opinions of American jurists, and hence, notwithstanding the English rule, that this court is at liberty to decide the question on principle, without regard to the decisions of other courts.

The question in controversy was most ably argued at the bar on both sides, and numerous authorities cited and commented upon. We cannot here undertake a review of the cases bearing upon the question. To do so would expand this opinion to an inordinate length without any corresponding benefit.

The proposition that there may be a valid subscribing of a will out of the testator's range of vision, is maintained in but very few cases. The leading case in support of the proposition is that of *Sturdivant v. Birchett*, 10 Gratt. (Va.), 67. The facts and the ruling of the court are correctly stated in the head note as follows: " A will is executed by the testator, and certain persons are requested by him to attest it. For convenience they take it into another room, out of the vision of the testator, and there subscribe their names to the paper as witnesses; and they immediately, within one or two minutes, re-

turn to the testator with the paper; and one of them, in the presence of the other, with the paper open in his hand, addresses the testator, and says, ' Here is your will, witnessed,' at the same time pointing to the names of the witnesses, which are on the same page and close to the name of the testator. The testator then takes the paper and looks at it as if examining it, and then folds it up, and speaks of it as his will. *Held*, that, under these circumstances, the recognition of their attestation by the witnesses to the testator is a substantial subscribing of their names as witnesses in his presence." Two of the five judges constituting the court dissented from the decision of the other three judges, holding to the English rule.

There are a few other similar cases in the same court; at least, cases which affirm the same proposition.

We believe but one other case has been cited, in which it is directly held that there may be a valid subscribing of a will by a witness thereto out of the view of the testator. That is the case of *Vaughan v. Vaughan*, decided in the county court of Cook county, Ill., by Judge BRADWELL, and reported in 13 Am. Law Reg. (4 N. S.), 735. The opinion contains a very able argument in support of that proposition; but the argument and decision are based on the statute of Illinois, which only requires that the will be *attested* (not attested *and subscribed*) "in the presence of the testator by two or more credible witnesses." The learned judge notes the distinction between "attesting" and "subscribing," and denies that the decisions under statutes requiring both acts to be in the presence of the testator are applicable in Illinois to a question concerning the subscribing of a will by a witness. This aspect of the Illinois case is noticed by Mr. Justice GRAY, in *Chase v. Kittredge*, 11 Allen, 49 (see p. 61).

In a note to *Vaughan v. Vaughan*, *supra*, the late Judge Redfield sharply criticised the English rule, and urged upon the courts of this country to break away from it and adopt the rule

for which the respondent contends in the present case. Judge Redfield there expressed the belief that the English House of Lords, whenever the question should come before it for final adjudication, would establish a different rule.

The question came before that tribunal in *Hindmarsh v. Charlton*, 8 H. of L. Cases, 160, and resulted in a reaffirmance of the rule which had theretofore prevailed in that country. In a note inserted in the third edition of his work on the Law of Wills, after the decision of *Hindmarsh v. Charlton* by the House of Lords, the same learned writer said, that since the rule has been affirmed " by the unanimous voice of the tribunal of last resort in the authoritative exposition of the common law, it might not answer any good purpose to longer question its reasonableness or necessity." And in the same connection he refers to the case of *Chase v. Kittredge, supra*, which upholds the same rule. 1 Redf. on Wills (4th ed.), 230.

Many cases in this country asserting and applying the same rule are referred to in the opinion in the case last cited, and in the brief of the learned counsel for the appellant in the present case. These are quite numerous.

Thus we find an overwhelming weight of authority in favor of the English rule; so overwhelming that as able and independent a jurist as was Judge Redfield, was constrained to yield to it, although he believed the rule unsound.

But the learned counsel for the respondent argued with great force against the rule, and eloquently appealed to us to overthrow it in this state, and establish the more just and reasonable rule for which he contended. The well known ability of the counsel, his great experience at the bar and his high appreciation of judicial duty, have prompted us to consider with much care whether this is a case which will justify us in overturning a specific rule of statutory construction established and upheld by such great weight of authority. We do not see our way clear to do so. We may concede that the rule is

unsound in principle; still it is a rule affecting the descent and testamentary disposition of property, and was established long before our statute of wills was enacted. It is a rule to which the maxim, *stare decisis*, is peculiarly applicable. To unsettle it, now by judicial decision, would be to unsettle a long and well established rule of property, which should never be done but by the legislature. To do so would be to add another to the list of cases already mentioned, in which the law has been warped and even perverted to accomplish what was supposed to be just and equitable, and to avoid the opposite. Thus to unsettle the law, even in the supposed interests of justice, is always perilous, often disastrous, and never justifiable. If the law is wrong, it is the duty of the legislature, not the courts, to correct it. The courts can only declare what the law is; they have no power to make it what it ought to be.

In the light of these fundamental principles, we can only apply to this case the governing rule of law as we find it. We must hold, therefore, that the instrument propounded as the last will and testament of the deceased was not subscribed in his presence by the two witnesses whose names are appended to it, but only by one of them; and hence, that the same should not be admitted to probate.

II. But the record seems to disclose another fatal objection to the probate of this instrument as a will, which was not discussed in the argument. It is quite probable that the instrument was not *attested* in the presence of George H. Downie, as required by the statute. The distinction between *attestation* and *subscribing* is well stated in *Swift v. Wiley*, 1 B. Mon. (Ky.), 114, as follows: "To *attest* the publication of a paper as a last will, and to *subscribe* to that paper the names of the witnesses, are very different things, and are required for obviously distinct and different ends. *Attestation* is the act of the senses, *subscription* is the act of the hand; the one is mental, and the other mechanical; and to attest a will is to

In the Matter of Downie's Will.

know that it was published *as such*, and to certify the facts required to constitute an actual and legal publication; but to subscribe a paper published as a will, is only to write on the same paper the name of the witness, for the sole purpose of identification."

In this case the evidence is, that George H. Downie did not know the nature of the instrument when he put his name to it; and there is no evidence in the case that the deceased in his presence ever declared that the instrument was a will, or made any mention of its character. Without deciding the point, we are inclined to think the law is, that there must be some word spoken, or some act done, by the testator in the presence of the witnesses, showing that the instrument was intended by him to be his will — something to show the nature of the instrument,— or there can be no valid attestation. Nothing of the kind occurred in the presence of George H. Downie; and hence, if our impressions are correct, the instrument was not attested by him in the presence of the testator. In that presence he failed to know that the instrument was intended by the testator to be his last will and testament.

It follows that the judgment of the circuit court must be reversed, and the cause remanded with directions to that court to affirm the order and judgment of the county court. The costs must be paid out of the estate of the deceased, on the ground that the persons named in the instrument as legatees and executor had probable cause for endeavoring to establish the instrument as a will, and have acted in good faith. *Jackman Will Case*, 26 Wis., 364; *S. C.*, id., 143.

*By the Court.* — So ordered.