ARISTON J. COOK v. LAADEN WINCHESTER AND CLARISSA WINCHESTER. IN THE MATTER OF THE ESTATE OF ALZINA J. PAGE, DECEASED.

*Will—Execution—Attestation.*

A will is attested and subscribed in the *presence* of the testatrix, within the meaning of How. Stat. § 5789, where the witnesses subscribe their names in another room, but within the hearing, knowledge, and understanding of the testatrix, after which they return to her room, and the will, consisting of one sheet of paper, is read over, and the signatures of the witnesses shown, to the testatrix, who is informed by the witnesses, or by one of them in the presence of the other, that the will had been signed by them, and who replies that " it is all right, and just as I want it; the witnesses and everything are all right."

Case made from Kent. (Grove, J.) Argued May 15, 1890. Decided July 2, 1890.

Appeal from order of circuit court affirming order of the probate court denying probate of a will. Reversed, and new trial ordered. The facts are stated in the opinion.

*Maher & Felker,* for proponent and appellant.

*Butterfield & Keeney* and *Thompson & Temple,* for contestants and appellees.

[The points and authorities of counsel are stated and cited in the opinion.—REPORTER.]

MORSE, J. ˙ This controversy involves the validity of a will, the sole question being whether or not it was duly executed, or rather witnessed, under the laws of this State. There is no question of fraud or undue influence in the case, nor did the testatrix lack mental capacity to execute a will.

It must be conceded from all the testimony in the case that the will was drawn by an honest, disinterested, and trustworthy man; that he was the chosen instrument of Mrs. Page to draft it; that she had frequently consulted and advised with him before as to the disposition of her property. and had told him how she intended to bequeath it; that the will as made was just as she wanted it, and as she had long intended to make it; that it was read to her before she signed it and after she signed, at both of which times she expressed herself as fully satisfied with it; that she signed it in the presence of the persons who witnessed it, and that she requested them to witness it; that she asked them after it was executed if they had witnessed it, and received an affirmative answer, and was then shown their signatures, and their names were read over to her. If the will is not sustained, the property will certainly go, under the law, where she did not wish it to go. It is therefore the duty of the courts to uphold it if possible.

It is claimed that the requirements of our statute were not complied with in the witnessing of this will. The statute provides (How. Stat. § 5789) that three things are requisite to the validity of a will:

1. That it shall be in writing.

2. That it shall be signed by the testator, or by some person in his presence, and by his express direction.

3. That it shall be attested and subscribed in the presence of the testator, by two or more competent witnesses.

The will was drawn by James Toland, supervisor of the township of Byron, Kent county, who lived only a few rods from Mrs. Page, and with whom she had frequently talked about making her will, and how she wished it drawn. On June 30, 1888, she sent for him. Mrs. Page had been an invalid for many years, and at this time was confined to her bed, and unable to leave it without help. Toland found her in a bedroom adjoining, and opening by a door into, the kitchen,—a kitchen bedroom,—which communicated with no other room. He asked Mrs. Page, who said that she was ready to make her will, and wished him to draw it, if she wanted it drawn in the same manner as she had before told him to draw it. She said, "Yes," and he proceeded. There was no table in the room where Mrs. Page was, and he drew the will on a table in the kitchen. This table was near the bedroom door, but when the door was open it was impossible for any one lying squarely on the bed to see the table or any one sitting at it. Mrs. Page could not move in bed, and was not able to see the table. Toland drew the will, and took it into the bedroom, and read it to Mrs. Page. She was satisfied with the will. Not being able to handle a pen very well, she requested Toland to write her name. He went to the kitchen table and wrote it. He then came in, and she made her mark.

Three ladies were present in the room, Mrs. Weaver, Mrs. McConnell, and Mrs. Miller. Mrs. Page requested Mrs. Weaver and Mrs. McConnell to witness the will.

Mrs. Weaver did not wish to sign it for some reason, and Mrs. Page then signified that she wished Mrs. Miller

to witness it. Mrs. Miller and Mrs. McConnell then stepped into the kitchen and signed the will as witnesses. Mr. Toland and the witnesses then went into the room again, and Toland read the will over to her again, and asked her if it suited her.   She said it was all right,— just as she intended it should be.   Toland showed the names of the witnesses to her, and also read them to her. He testified that previous to his showing it to her she asked the witnesses if they had signed it, and they told her they had.   The door was open between the kitchen and bedroom when the witnessing was done.   Mrs. Miller's testimony agrees with Toland, except she says that she stood in the door when the will was being read over after the witnesses had signed it, and did not hear Mrs. Page ask her or Mrs. McConnell if they had signed as witnesses, but heard Toland tell her that they had witnessed the will, and read their names to her.   Mrs. McConnell (now Mrs. Merritt) states that when they went back into the bedroom after witnessing the will, and Toland read it all over to Mrs. Page again, she said it was all right, and just as she wanted it; the witnesses and everything were all right.

" She asked me if we had signed it, and I told her we had.   Mrs. Miller and Mr. Toland were there."

The room in which Mrs. Page was lying was eight feet square.   The kitchen was about fifteen feet square.   The distance from where the witnesses sat while signing the will to the bed of Mrs. Page was about twelve feet.   The will was denied probate by the judge of probate of Kent county, and on appeal to the circuit court his action was affirmed.

It is claimed that the will was not executed—witnessed —in the presence of the testatrix.   It is true that it was physically impossible for her to see the witnesses when they were in the act of signing it without moving her-

self upon the edge of the bed, which she was unable to do. And it is argued by counsel for the contestants that there are no cases to be found in the books, except possibly two, which can be claimed as authority for the admission of the will to probate; that the statute has been uniformly held to require that—

" The condition and position of the testator when his will is attested, and in reference to the act of signing by the witnesses, and their locality when signing, must be such that he has knowledge of what is going forward, and is mentally observant of the specific act in progress, and, unless he is blind, the signing by the witnesses must occur where the testator, as he is circumstanced, may see them sign if he choose to do so. If in this state of things some change in the testator's posture is requisite to bring the action of the witnesses within the scope of his vision, and such movement is not prevented by his physical infirmity, but is caused by an indisposition or indifference on his part to take visual notice of the proceeding, the act of witnessing is to be considered as done in his presence. If, however, the testator's ability to see the witnesses subscribe is dependent upon his ability to make the requisite movement, then if his ailment so operates upon him as to prevent this movement, and on this account he does not see the witnesses subscribe, the will is not witnessed in his presence." *Aikin v. Weckerly,* 19 Mich. 504, 505.

A large number of cases are cited in support of the counsel's claim, to wit: *Mandeville v. Parker,* 31 N. J. Eq. 242; *Wright v. Manifold,* 1 Maule & S. 294; *Reynolds v. Reynolds,* Speers, 253; *Robinson v. King,* 6 Ga. 539; *Brooks v. Duffell,* 23 Id. 441; *Reed v. Roberts,* 26 Id. 294; *Jones v. Tuck,* 3 Jones (N. C.), 202; *Eccleston v. Petty,* Carth. 79; *Broderick v. Broderick,* 1 P. Wms. 239; *Lamb v. Girtman,* 33 Ga. 289; *Neil v. Neil,* 1 Leigh, 6; *Orndorff v. Hummer,* 12 B. Mon. 626; *In re Downie's Will,* 42 Wis. 66; *Duffie v. Corridon,* 40 Ga. 122; *Edelen v. Hardey's Lessee,* 7 Har. & J. 61; *Russell v. Falls,* 3 Har. & McH. 457; *Graham v. Graham,* 10 Ired. 219; *In re*

*Cox's Will,* 1 Jones (N. C.), 321; *Ragland v. Huntingdon,* 1 Ired. 561; *Chase v. Kittredge,* 11 Allen, 49; *Compton v. Mitton,* 12 N. J. Law, 71; *Combs v. Jolly,* 3 N. J. Eq. 625; *Mickle v. Matlack,* 17 N. J. Law, 86; *Hindmarsh v. Carlton,* 8 H. L. Cas. 160.

It must be conceded that these cases all fully support the contention that the will must be witnessed in the same room with the testator, or, if out of the room, where he can see them sign if he desires to do so; he must be in a position where it is possible to see them. The fact that the will, after being witnessed out of the testator's sight, is brought to the view of the testator, and he looks upon the signatures of the witnesses, and they then acknowledge the witnessing of it before him, will not cure this defect in its execution, according to the authority of some of these cases. See *Chase v. Kittredge,* 11 Allen, 61; *In re Cox's Will,* 1 Jones (N. C.), 321; *Graham v. Graham,* 10 Ired. 219; *Russell v. Falls,* 3 Har. & McH. 457; *Lamb v. Girtman,* 33 Ga. 289; *In re Downie's Will,* 42 Wis. 66.

The extreme rule laid down in some of these cases cited by counsel for contestants, notably *Graham v. Graham, supra,* a North Carolina case, was criticised, and I think justly so, by Mr. Justice CHAMPLIN in *Maynard v. Vinton,* 59 Mich., at pages 148, 149, but for the purposes of that case the doctrine of *Aikin v. Weckerly* was adhered to. In *Maynard v. Vinton* the testatrix was in a position where she might have seen the witnesses sign, as they were within the range of her vision, if she saw fit to look, as was also the case with the testator in *Aikin v. Weckerly.* The precise question raised by the record in this case has never been presented to this Court, and neither of the two cases above mentioned seems to stand in the way of a just and liberal construction of the statute in this case in favor of the validity of the execution of this

will of Alzina Page. I agree with Judge CHAMPLIN that "presence," as used in the statute, has been too narrowly construed by many of the courts as meaning that the witnesses must be under the eye of the testator. I find two cases referred to on the argument where the facts are almost identical with those found by the circuit judge in this case, and in both of which the will was sustained. In the first, *Sturdivant v. Birchett*, 10 Grat. 67, the will was attested by the witnesses subscribing their names as such in a different room from that in which the testator was lying at the time of such signing. The testator could not see the witnesses in the act of signing, either from the bed on which he lay or from any other place within the room. The testator signed the will in the presence of the witnesses, and requested them to attest it. They went together into another room for that purpose, it being inconvenient to do so in the room where the testator was lying. When they subscribed their names no other person was in the room, and they immediately returned to the room where the testator was. They were gone from that room not over two minutes. They took the will to the testator, who was lying in bed, and, both of the witnesses being together, one of them said to him, "Mr. Sturdivant, here is your will witnessed;" at the same time pointing with his finger to the names of the witnesses, and holding the will open before him, the names of said witnesses being on the same page, and close to that of the testator. He took the will in his hands, and looked at it as if he was examining it. He then closed or folded it. On being told that he was ill, and had better give the will to some one to keep for him, he asked whether if he got well he could take it back from the person to whom he might give it. Being answered in the affirmative, he said:

"It is my will, and I wish it to stand, but I may hereafter, on getting well, wish to make some slight alteration in it."

He then handed the will to a friend.

In the other case of *Riggs v. Riggs*, 135 Mass. 238 (decided June 21, 1883), the witnesses to the will saw the testator sign it, and were in the room with him at the time. They signed it as witnesses in a room adjoining the one testator was in, and at a distance of about nine feet from him, the door being open.  The testator was in bed, and in such a position that if he had been able to turn his head round he might, by so turning it, have seen the witnesses when they signed their names, and also the will itself, unless during a part of the time when their bodies obstructed the view; but from the effect of an injury which he had received he could not in point of fact turn his head sufficiently to see them and the will at the time when they were signing their names as witnesses.  After the witnesses had signed the will it was handed to the testator as he was lying upon the bed, and he read their names as signed, and said that he was glad that it was done.

These cases differ from the one at bar only in the fact that the will was taken, after witnessing, into the hands of the testator, who in one case looked at it, and in the other read the names, while in Mrs. Page's case the names were shown her while the will was in the hands of the scrivener, and read to her, as well as the names of the witnesses to it.  The difference is unimportant.  In all three of the cases the maker of the will knew what he or she was doing, and what was being done, being conscious of all that took place, and no claim of fraud is made or entertainable in any of them.  The majority of the Virginia supreme court (three out of five judges) sustained the will in the first case, and held that the

statute was substantially complied with, in a very able and exhaustive opinion by Justice Lee. In his opinion the learned justice shows conclusively from the authorities that the words "in presence of" do not necessarily imply that the testator and the witnesses must be in the same room, nor that actual sight or inspection of the process of signing is peremptorily required, because it is well settled that a blind man may make a will. He holds that the recognition by the witnesses of their signatures to the will made within the immediate sight and presence of the testator, immediately after they have signed it in an adjoining room, furnishes as complete a security against the frauds and impositions sought to be guarded against by the statute as the actual manual operation of writing their names by the witnesses under his eye. The identity of the witnesses is also equally assured in both modes.

In the Massachusetts case the court was unanimous in sustaining the will. In referring to the holding by some of the courts that an attestation was insufficient when the testator did not and could not see the witnesses subscribe their names, Chief Justice Morton, speaking for the court, says:

"We are of opinion that so nice and narrow a construction is not required by the letter, and would defeat the spirit, of our statute. * * * * * *

"The statute does not make the test of the validity of a will to be that the testator must see the witnesses subscribe their names. They must subscribe 'in his presence,' but in cases where he has lost or cannot use his sense of sight, if his mind and hearing are not affected, if he is sensible of what is being done, if the witnesses subscribe in the same room, or in such close proximity as to be within the line of vision of one in his position who could see, and within his hearing, they subscribe in his presence. * * * In a case like the one before us, there is much less liability to deception or imposition than there would be in the case of a blind man, because

the testator, by holding the will before his eyes, could determine by sight that the will subscribed by the witnesses was the same will executed by him.    *    *    *
The door was open, and the table was within the line of vision of the testator, if he had been able to look, and the witnesses were within his hearing.    The testator could hear all that was said, and knew and understood all that was done; and, after the witnesses had signed it,    *    *    *    it was handed to the testator, and he read their names as signed, and said he was glad it was done.    For the reasons before stated, we are of opinion that this was an attestation in his presence, and was sufficient."

So, in this case, the witnesses were in the line of the testatrix's vision if she could have moved to one side of the bed, which she could not do, as in the Massachusetts case the witnesses were in the range of the testator's vision if he could have turned his head, but he could not.    I am better satisfied with the liberal construction of the statute and the reasoning of these two cases than I am with the authorities cited to the opposite, and sustaining the "nice and narrow" interpretation of the statute; and in the case at bar such holding, as it will in most cases, reaches the justice and equity of the case, which adds to my satisfaction.    No fraud was perpetrated, and none well could have been, under the circumstances of the execution of this will.    But, in holding the will invalid, a fraud is committed upon the testatrix, as well as her chosen beneficiary, by the law, and her property is disposed of contrary to her wish and intention, to those from whom she sought to keep it away.    It is not the purpose or province of the law to do this when it can be avoided.    In the definition of the phrase "in the presence of" due regard must be had to the circumstances of each particular case, as it is well settled by all the authorities that the statute does not require absolutely that the witnessing must be done in the actual sight of the testator, nor yet within the same room with him.    If, as before

shown, they sign within his hearing, knowledge, and understanding, and so near as not to be substantially away from him, they are considered to be in his presence.

But we hold that the execution of this will was valid expressly upon the ground that not only was the act of signing by the witnesses within the hearing, knowledge, and understanding of the testatrix, but after such signing the witnesses came back into the room where she was with the will, which was on one sheet of paper; that the will was then again all read over to her by the scrivener, and the names of the witnesses read to her and their signatures shown to her, and she informed by the witnesses, or one of them in the presence of the other, that the will had been signed by them; and that she then said it was all right, "just as she wanted it; witnesses and everything was all right." This seems to us to have been a substantial compliance with the statute, and a witnessing in the presence of the testatrix.

The circuit judge returns in his findings of fact that his decision was based entirely on the ground that the will was not properly witnessed under the statute; that, the will not being admitted in evidence for this reason, the case proceeded no further, the proponent taking an exception, and resting. The contestants announced that they were prepared to show that the testatrix was incompetent to make a will.

The judgment of the circuit court will be reversed, and a new trial granted.

The other Justices concurred.