ÍDDSE Marshall
delivered the opinion of the Court.
The County Court of Logan, having rejected a paper offered for probate as the will of John Orndorff, the case was taken to the Logan Circuit Court, by writ of error, and the judge of that Court, having upon the evidence adduced by the parties, decided that paper was the valid will of said Orndorff, the case is befoie this Court, for revision upon the evidence before the Circuit Court, as presented by a bill of exceptions. .
The validity of the will is opposed on the grounds, first, that the testator was incompetent to make a will when this paper was written and attested, and secondly that *620 the requisitions of the statute with regard to the attestation and subscription by the witnesses lias not been complied with. There is however, a preliminary question with respect to the competency of William Morgan, who was admitted to testify in favor of the will. He was the draftsman of the paper, was named as one of two executors, war the brother-in-law of the testator neighbor and friend, had been long in habits of intimacy with him, and is proved to have been worthy of full and entire credit. His competency is denied not on the ground that he was named as executor which is admitted to be insufficient, but on the ground that by the will the executors are vested with such powers and interest, and will have such opportunity of making money for themselves out of a large estate, as creates an interest in the estallishment of the will which should render them incompetent to testify in support of it.
The testator possessed a large estate in land, slaves and personality, one portion of which he devised to his wife, during life or widowho d, and the residue to his daughter then of tender years, to be delivered to her at the age of twenty-one years. In the meantime the executors were to retain and manage it, to leud out the money, and take mortgages, but not to be responsible for interest on any residuum which might remain in their hands, and to have a discretion in lending or not lending money. And in the last clause the testator provides if his daughter should die, leaving no lawful heir of her body, alibis negroes shouldffie free, and that his executors should retain $500, in their hands to carry the same into effect. And the County Court is desired not to require security from them.
We are of opinion that there is nothing in any of these provisions which authorizes the executors to use a single dollar of the estate, but they are responsible for their management of every portion of it, and that as the direct requisition that they shall retain the estate and lend out the money until the devisee attains full age, would subject them to more than ordinary *621 rosponsibilityandloss,the provision that they should not be responsible tor any residuum remaining in ttieir hands is nothing more than the assertion of an equitable principle for their safety, which the chancellor, if satisfied that they acted ftithfully would apply, though it were not expressed in the will. The discretion given with respect to lending or not, is also merely conservative, to be exercised not with a view to their own profit, but with a view to the benefit of the estate and the faithful and convenient discharge of their duties under a trust which requires them to loan the money, when it can be done safely and without such trouble or inconvenience, as would be unreasonably onerous. For any abuse of this trust, or for inexcusable neglect they would be held to strict accountability by the chancellor, who even if they should give no security in the County Court, might for good cause require it from them, or might take the trust out of their hands. The clause with respect to the $500, does not put that sum out of the trust, nor authorize its use by the executors for their own benefit, but merely authorizes them to retain and apply that sum to the particular purpose designated.
Under this viewof the will and of the rights and duties of the executors under it, we are of opinion that they have no other interest than that which ordinary executors or other trustees who are to receive a commission have in the establishment of the trust. And however this interest may operate with respect to the competency of other trustees, it has been often decided and is the established doctrine in this Court, that one named as executor, is not on that ground alone, incompetent to testify in support of the will. Any trustee may abuse bis trust and attempt to pervert his powers to his own advantage, but the possibility that he may do so, or the opportunity afforded for his doing it in a particular case, cannot affect the question of his competency asa witness, however it may, with other circumstances affect his credit.
Though the tesla tor well under* stand what he is doing, the will written according to his Ninten-lion distinctly read to and sanctioned by him, & signed.
Morgan then, was properly decided to be a competent witness. and his testimony corroborated by that of another witness who was present when the will was dictated, written, read over to the testator, and signed by him in their presence, and supported also by the general statements of others, leaves no room to doubt that John Orndorf, though much enfeebled by the disease of which on the second day afterwards he died, and though about the time he was generrally in a com'atose state, did, in fact, dictate the entire will,.first by a general statement of the intended disposition of his estate, and afterwards in detachedportions as the minutes of each clause were read over to him. And afterwards when the will was drawn out from the minutes,.noticed omissions, and directed additions in such a manner as to prove incontestiblv that his attention and thoughts were fully awake, that his mind was active on the subject, that he understood perfectly what he was saying and doing, that the dispositions which he dictated were the results' of his own will and judgment, and that the paper which he thus dictated and signed did in fact contain his will. That he did dictate it in the manner and under the circumstances stated, proves that he was capable of taking an intelligent survey of his affairs .and of his duties, and of expressing his wishes and ■intentions with respect to them.
The witnesses all concur in saying that although his mind may have been and as some say, was enfeebled by disease,, there was no aberration or wandering of the intellect. And upon comparison of the whole testimony we think it clear that although he generally lays with his eyes closed, and as the physicians say, in a comatose state, he was easily ordered and capable instantaneously of comprehending and thinking of the subject on which he was addressed. And although the two attending physicians who subsrcibed the will as witnesses, but who were not present when it was written or read over and signed, express the opinion of that he was not in a condition to make a will, 01" at least entertained doubts *623 on the subject, we cannot resist the conclusion upon the whole evidence, that he was in fact capable and did ■in fact dictate and approve as he most certainly did ' sign the will as written. So far therefore, as the question of probate depends upon capacity alone, w'e should decide in favor of the will, as being the valid will of John Orndorf, dictated and signed understandingly by him when he was competent to make a will.
Yet if not attested by two or more witnessed iu his presence, it will not pass lands and slaves: (Stat. law, 1537.) Held that though the will be acknowledged by the testator before the witnesses, yet if the attestation ofthe witnesses be not in view of the testator or where he might see without being as sisted to do so, it is invalid to pass land slaves though the attestation be in the same room: {Neil vs Neil, &c., (I Leigh's Eep.} 1.)
But with respect to lands and slaves, something more is requisite. The statute of 1797, concerning wills, &c., (Statute law, 1537,) prescribes with respect to wills of land, not only that they shall be signed by the testator, or by his authority, but that, unless written wholly by himself, “ they shall be attested by two or more competent witnesses subscribing their names in his presence” This will was as we have seen signed by the testator himself, which he affected by raising ,and supporting himself, or being raised and supported on one arm in his bed, while with the other hand he subscribed his name three times on the paper which was laid on a book in his lap. Exhausted, doubtless, by the effort of dictating and signing the will, he relapsed into sleep or coma, and so continued for some hours, when, at the suggestion of Morgan, the two physicians and a third person then in the house, were brought into the room to witness the will. They of course approached the bed where Orndorf lay, and while one of the physicians held the will in his hand, Morgain said, in an elevated tone, “ your will, Captain” — Orndorf being somewhat deaf — when Orndorf immediately opened his eyes, and said, “ I acknowledge it,” or “ I acknowledge that, gentlemen,” and immediately closed his eyes in seeming sleep, or as the phy-sycians say, relapsed into coma.
They express the opinion too, that he would have acknowledged any other paper thus presented as readily as the will, and this is probably true. Still as this was undoubtedly the paper signed by him as his will, and which he desired to have attested as such, we *624 should deem this a sufficient acknowledgement, if the precise requisitions of the slatute were followed in the remaining formalities, and especially as it may be assumed that the sick man understood perfectly that he was acknowledging a will, and as it cannot be assumed with certainty that be did not notice the paper sufficiently to be satisfied that it was the true one which he had signed.
But it seems that after this acknowledgment by the testator, and as we suppose, after he had closed his e\es, as the witnesses say he did immediately, ihey went to the table on which the will had been written, which had stood, for the benefit of light frem a window, just behind the head of the lounge in which 1he sick man lay, in the middle of the room, and the fable having been so removed as to be between four and five feet from ihe lounge — ihe three witnesses, seme of them being between the table and the bed, subscribed their names as witnesses to the will. The head-board of the lounge intervened between the testalor and the table, so that at the moment of the subscribtion by the witnesses, he could not, as he lay in the bed. see the table, and probably not even see the witnesses: and it is doublful whether if awake he could have changed his position, without assistance, so as to have seen them. And the question is made whether this was a subscription in the presence of the testator. This requisition of the statute was intended to secure to the testator the means or opportunity of knowing that a false will is not substituted for a true one, and that his will is witnessed by the persons whom he has chosen for the purpose. But it has never been held that it was necessary that he should actually see either the will or the witnesses when the attesting clause was subscribed, it is sufficient that he might see them if he had desired to do so. And as this wiil was subscribed in the same room in which the testator lay, and therefore actually in bis presence, the question is first, whether, if he had desired to see, be might not, without any extrinsic *625 aid, have placed, himself in a position in which he could and. would have seen what was going on, which is a question of fact; and secondly, whether, even if he could not have done this without the aid of others, it is not to be assumed uuless the contrary is shown, that he might have had that aid if he d'ésired it, and therefore that he might have seen what wras going on, if he had wished to see it.
When the subscription takes place in a different room from that in which the testator lies in bed, it is not actually and in common parlance done in his presence. But if it is actually in his view, or perhaps if by such change of position as he himself could make in his bed, he could see it, and in one case even when the testatrix was in her carriage, and might have seen the witnesses subscribe in a scrivener’s office through an open window, this, in support of a fair will, has been held to be sufficient in the presence of the testator to answer the objects of the statute. But this is a' constructive and not an actual presence. And to say in such a case that the subscription, though done out of the room in which the testator was, and therefore not actually in his presence, might be considered as done in his presence — if by the aid of others he might have seen it, might sanction a subscription in another room, with the door shut between them, because the testator might have it opened if he desired it. There must, therefore, be some limit to the doctrine of constructive presence. And the requisition that if the subscription be not in the same room in which the testator lies, it must be clearly in view, so that by the exertion of his own volition and his own physical power, he may, by a mere change of • position in the bed, see it if he will, is a sufficiently liberal, and perhaps too liberal a stretch of the constructive presence, which will meet the objects of the statute. It would be a safe, and is perhaps the true doctrine to say, that in such cases the position of the witnesses in subscribing the will should be such that the testator might see the will and the witnesses by *626 merely looking in. that direction. For if he could not see them thus easily, he might not know which way to turn, or whether any effort would be effectual. And it is to be recollected that so far as presence is intended to enable the testator to identify the paper which is subscribed as his will, distance is a most important element in the question.
When the subscription takes place in the same room in which the testator is, and within a few feet of him, it is actually in his presence. The terms of the statute are literally complied with, and prima facie the subscription is in the presence of the testator within all the purposes of the statute* But circumstances may exist which show that some of the objects of the statute have been defeated. And the difference between a case where the subscription is in the same, and one where it is in a different room, consists in the fact that in the latter case it is necessary to prove circumstances which constitute a virtual or constructive presence, and thus bring the subscription substantially within the requisition and object of the statute, while in the former case, it is necessary in order to invalidate the subscription that circumstances should be proved, which show that although there was actual presence there, was for the purposes of the statute, virtual absence, And such as we think is the current of authority on the subject departed from so far as we have seen only in the case of Neil vs Neil, etc., (1, Leigh’s Rep., 1,) in which three judges against two decided that it was necessary even where the subscription wras in the same room with the testator, that he must have had the physical power of himself to make such change of position in his bed as. would enable him to see the act of subscription if he wished to see it. This was, it seems to us, applying the same tests to a subscription in the same room, as would be necessary to the validity of a subscription in a different room, which, under the view that we have taken of the subject, is not necessary or proper. We refer to the case of Neil vs Neil as, containing a full statement and review of the authorities.
Signed the will by the witnesses mustbe in presence of the testator: 5 Monroe, 2U2, 3 Salk., 39S 1 Pi. W'ms., 741. Longford’s Pep., 241.
In the case of Alsey Howard's will, (5, Monroe, 202,) this Court says, that an attestation in the same room with the testatrix is a sufficient subscription in her presence, is well settled by adjudged cases; to several of which reference is made in Davy vs Smith, (3d Salk., 395,) the Court say, “if the witness subscribe in the same room where the testator lies, though the curtains of his bed be closed, it is good under thestatute, because it is in his power to see them ; and what is done shall be construed to be in his presence.” In Longford vs Eyre, (1, P. Williams, 741,) Lord Chancellor Macles-field said, “ the bare subscribing by the witnesses in the same room, did not necessarily imply it to be in the testator’s presence, for it might be in a corner of the room in a clandestine fraudulent way ;”but that here, it being sworn by the witness that he subscribed the will at the request of the testatrix, and in the same room, this could not be fraudulent, and therefore well enough. And as the circumstances here preclude all suppositson that there was fraud in the subscription of the will, and as there were those present who it must be presumed would have given the testator any aid he required, or have moved the table to his bed side, we conclude that whether he was able or not by the exertion of his own physical power to see the act of subscribing, as it was done in the same room, without any effort at concealment, it was a sufficient subscription, if the testator was then conscious of what was going on.
But although so far as mere space was concerned, the subscription was in his presence, we are satisfied that the same reasons which require that he should have been physically capable by his own exertion or by the aid of others to see what was going on if he chose to do so, operate even more powerfully to require that he should have .been conscious of it, and that he should have had the will or mental power to determine whether he would or not see it. If this be not requisite the subscription by the witnesses would be sufficient, though *628 made after the death of the testator, or after he had relapsed into perfect delirium, or had become wholly insensible to external objects from the near approach of death. And if this were sufficient, the objects of the statute would be as fully accomplished if the will were subscribed a year after the testator’s death, or at any distance from his presence during his life. If authority were necessary on this subject, it may be found in Right vs Price, (Doug. Rep,, 241.)
When the condition of a testator is such, and immediately after signing the will, and before the subscription by the witnesses, from sleep or other cause, he becomes insensible to what is passing around him, and unconscious of the act of subscribing, which he has a right to supervise & is in fact unable to determine whether he will or will not supervise it, the attestation is not jn the sense of the statute made in his presence, and the will is not valid to pass land and slaves.
Bat we consider the'proposition too obvious to re-qnire reasoning or authority in its support, that when the condition of the testator is such, that immediately after the acknowledgment, and before the subscription of the will, from sleep or other cause he becomes insensible to what is passing around him and unconscious of the act of subscribing, which he has a right to supervise, and thus in fact, is unable to determine whether, he will or will not supervise it, the subscription then made is not in the sense or within the objects of the statute made in his presence. And as upon the evidence in this case we are bound to assume that the. testator Orndorf was in this situation when the witness-, es subscribed his will, we conclude that the subscription was not sufficient under the statute, and therefore that the will should not and cannot be established as a will of land, and as a will of slaves requires the same-solemnities as are prescribed for a will of land, this is not a valid will as to either, and should not have been-established or admitted to record without qualification.
But a will of personalty is not subject to the requisitions of the statute, which has been referred to, nor of any other, unless it be merely verbal or nuncupa-tive. And so far as the personal estate of John Orn-dorf, is concerned including the appointment of executors, the proof is amply sufficient to establish the will and to authorize its admission to record as a will of personalty. And that it may be so far established as a nuncupative will, or as a written will not formally executed -or-attested, is well established, Offutt vs Offutt, *629 (3 5. Mon. 162,) and as such, it should have been ad-Knitted to record as a valid-will.
W. L. Underwood, for appellant; Bristow, for ap-pellee.
Wherefore, the order or judgment of the Circuit Court establishing this will, and admitting it to record without qualification is reversed and the cause remanded, with directions to admit it to record in the Circuit Court, and also in the County Court, as a will of personalty, but insufficient as a will of land or slaves.
The costs of this Court to be divided.