Mandeville *v.* Parker.

---

ABRAHAM MANDEVILLE and others, appellants,

*v.*

JANE PARKER and others, respondents.

The witnesses to a will signed in a room adjoining that in which the testator lay. Between the rooms there was a door partly open, but the testator could not see them sign.—*Held*, not to have been a compliance with the statute which requires that the witnesses sign in the presence of the testator.

On appeal from decree of Morris orphans court refusing probate of a paper writing purporting to be the last will

---

NOTE.—The rule is established in New Jersey, that the signing of the witnesses to a will must be done in the testator's presence. *Den* v. *Allen, Pen. 35, 43; Mickle* v. *Matlack, 2 Harr. 86, 96, 116.*

The following cases show what has been deemed a sufficient signing in the presence of the testator:

In *Shires* v. *Glasscock, 2 Salk. 688, Carth. 81,* the witnesses withdrew

B—Bed where testator lay.
C—Chair where witnesses sat while attesting will.
D—Door between bed-room and kitchen, partly open.
H—Position of testator's head.
K—Kitchen.
PP—Partition wall between rooms.
R—Bed-room.
T—Table at which witnesses sat while attesting will.

Mandeville *v.* Parker.

and testament of Jacob G. Mandeville, deceased, late of that county.

*Mr. A. W. Bell* and *Mr. Theodore Little*, for appellants.

*Mr. A. Mills*, for respondents.

THE ORDINARY.

On the 14th day of March, 1874, Jacob G. Mandeville executed an instrument of writing as his last will and testament. It was drawn by Benjamin Roome, a scrivener, for whom he had sent. The testator signed it with his mark (he had, to a very great extent, lost the use of his right arm and hand, through an accident), in the presence of Mr. Roome and Mr. William D. F. Merrick, a neighbor who had been sent for to witness the will. The testator, at

into a gallery and there subscribed the will. Between the gallery and the bed-chamber where the testator lay, there was a lobby with glass doors, and the glass broken in some places, and the testator could, through the broken glass, have seen the table where the witnesses signed.

In *Dary* v. *Smith, 3 Salk. 395, 12 Mod. 37*, the testator lay in a bed in one room, and the witnesses went through a small passage into another room, and there, at a table opposite the door (both doors being open), wrote their signatures; it being possible for the testator to see their acts; and, *semble*, good, if in the same room where the testator lies, although the bed-curtains be drawn close. *Ib.;* also, *Longford* v. *Eyal, 1 P. Wms. 740*, and *Newton* v. *Clarke, 2 Curteis 320.*

In *Todd* v. *Winchelsea, Moo. & M. 12, 2 Car. & P. 488, 3 Russ. 441*, the will was taken into an adjoining room, the door left open, and a person lying where the testator did could see a small part of the adjoining room, in which there were two tables, one commonly used as a writing-table, and generally standing out of sight as to testator's position; the other, also movable, whose position was not shown. The witnesses did not remember on which table the will was attested. Also, *Percy's Case, 1 Roberts. 278.*

In *Casson* v. *Dade, 1 Bro. C. C. 99, Dick. 586*, the carriage of testatrix was in such a position that she might have seen, through the window of the carriage and of the office, the witnesses signing her will within the office.

In *Trimnell's Case, 11 Jur. (N. S.) 248*, one witness signed in testator's presence, and the other, in order to sign, withdrew, at his request, into an adjacent room, and signed at a table where he could have been seen by any one sitting up in testator's bed, the testator being physically able to do so, and the doors of both rooms being open.

the time, was in his last illness. He died the next day. He lay in his house, on a bed in a small bed-room in the rear of the kitchen, and separated therefrom by a partition wall, in which was a door. The bed was in the northeast corner of the bed-room; the partition was on the south of the bed-room, and the door, at its nearest point, was about eight or nine feet distant from the head of the bed. The testator, lying in the bed, could see a person standing at the door. The door opened outwards into the kitchen. In the kitchen, standing sidewise against the partition, and entirely out of sight from the place where the bed stood, was a table, with a leaf on each side. The door was partly open. The witnesses, after the testator had signed and declared the will, took the paper out of the bed-room into the kitchen, and on that table signed their names. The paper was not afterwards taken or shown to the testator, but was

In *Wright* v. *Lewis, 5 Rich. 212,* the testator, being in ordinary health, after executing his will on a piazza near a door, left his seat to be occupied by the witnesses while subscribing their names, and stepped into and remained in an adjoining room, from which he might have seen the attestation, although none of the witnesses pretended to know where he was when they signed, nor could he have seen them from the seat he was occupying when they immediately afterward went into that room.

In *Ray* v. *Hill, 3 Strobh. 297,* the witnesses, when signing, were so near to the testator, a blind man, that he could have heard the scratching of their pens.

In *Tucker* v. *Oxner, 12 Rich. 141,* when the witness rose from the table where he had been attesting her will, the testatrix, whom he had not noticed before, was standing in a doorway leading into another apartment, and looking towards him. [The decision, however, went off on another point.]

In *Bynum* v. *Bynum, 11 Ired. 632,* the witnesses signed at a table near the head of a bed where the testatrix was lying very sick; she could see the table and their arms, but perhaps not the paper on which the will was written.

In *Cornelius* v. *Cornelius, 7 Jones 593,* the table was on the testator's left side, seven or eight feet away, and a little back of where he was lying, but he could have seen the pen and paper by turning his head half over, which he was physically capable of doing—and one witness said he observed that the testator did once turn his head during the attestation.

In *Hill* v. *Burge, 12 Ala. 687,* the testator was lying in bed with his head propped up and averted from the attesting witnesses, but by turning his head he could have seen them, although some of them,

Mandeville *v.* Parker.

handed, after the witnesses had signed it, to the testator's wife, by the scrivener. The orphans court of Morris county refused to admit the paper to probate, on the ground that it was not attested by the witnesses in the presence of the testator.

I am satisfied, from the evidence, that the testator was of sound and disposing mind when the will was made, and that it was his free act.

Objection is made to the publication, on the ground that it appears to have been made before the will was signed, and that it was a mere acknowledgment by the testator of the instrument "to be his hand and seal for the uses and purposes therein mentioned and expressed." The testimony shows clearly that he acknowledged it to be his last will and testament. Both of the witnesses say so, and it is evident that that was his language from the fact that, at first,

while attesting, had their backs toward him. See, also, *Pope* v. *Pickett, 51 Ala. 584.*

In *Moore* v. *Moore, 8 Gratt. 307,* four judges were equally divided on the question of the validity of an attestation made in a passage-way adjoining the room where the testator lay. He could not have seen them while lying down, but by leaning over the foot of the bed or by getting out of it, either of which he had strength to do, he could have seen them.

In *Sturdivant* v. *Birchett, 10 Gratt. 67,* three out of five judges held that an attestation made in an adjoining room, in such a position that it was impossible for the testator to see the act, would be validated by their acknowledgment of the genuineness of their signatures, made immediately afterwards to the testator.

In *Nock* v. *Nock, 10 Gratt. 106,* the witnesses signed, at a bureau, in an adjoining room, sixteen or seventeen feet from the bed where the testator was lying with his head raised up, and from which he could, through an open door, plainly see the witnesses, excepting their forearms and hands, while writing.

In *McElfresh* v. *Guard, 32 Ind. 408,* the will, after execution by the testatrix, was taken into an adjoining room and attested by the witnesses at a stand or desk, in a position where she might have seen them through a door which stood open.

In *Turner* v. *Cook, 36 Ind. 129,* the witnesses attested the will on a table in a corner of the testator's room, opposite to where he lay, with nothing intervening. See, also, *Bundy* v. *McKnight, 48 Ind. 502, 509.*

In *Mason* v. *Harrison, 5 Harr. & Johns. 480,* the testator was sitting up in bed with his back towards the witnesses while they were signing in the same room, in a place where he could have seen them by turning his head, and this he was capable of doing.

Mandeville *v.* Parker.

and until an explanation was made to him, he declined to
acknowledge that it was his last will because it was the first
he had ever made, and also because he might get well and
make another. If the publication was made before the tes-
tator signed, it was a sufficient compliance with the pro-
vision of the statute in that respect. *Mundy* v. *Mundy, 2*
*McCart. 290 ; Errickson* v. *Fields, 3 Stew. 634.*

But I am satisfied, from the evidence, that the provision
of the statute which requires that the witnesses sign in the
presence of the testator, was not complied with. The cer-
tificate of attestation declares that the witnesses signed in the
presence of the testator, and that fact throws the burden of
proof to the contrary on the opponents of the will. *Tappen*
v. *Davidson, 12 C. E. Gr. 459 ; Allaire* v. *Allaire, 8 Vr. 312,*
*S. C. in error, 10 Vr. 113.* There is no evidence that the
witnesses signed in the presence of the testator, but the

In *Butler* v. *Benson, 1 Barb. 526, 530,* an attestation in the testator's
presence was deemed still necessary under the New York statute.
But see *Lyon* v. *Smith, 11 Barb. 124; Ruddon* v. *McDonald, 1 Bradf. 352 ;*
*Vernam* v. *Spencer, 3 Bradf. 16, 20.*

In *Ambre* v. *Weishaar, 74 Ill. 109,* the testatrix was sitting in her bed,
propped up, and could have seen the witnesses while signing in the
next room, the door between the rooms being open, and a straight
line from her position through the doorway striking about the centre
of their table.

In *Meurer's Case, 44 Wis. 392,* the testator, during and after executing
his will, sat up in his bed, and from that posture could plainly see the
witnesses attesting his will in the next room, through an open doorway.

The following are instances of what has been deemed *not* a sufficient
signing in the testator's presence :

In *Edelston* v. *Speake, Holt 222, 3 Mod. 259, Comb. 156,* the witnesses
subscribed their names in a hall adjoining the room where the testator
lay, but in such a place that he could not see them.

In *Machell* v. *Temple, 2 Show. 288,* the witnesses withdrew out of sight
into another room, at the request of the testator, because the noise in
his sick-room disturbed him.

In *Broderick* v. *Broderick, 1 P. Wms. 239, 4 Vin. Abr. 534,* the witnesses,
for the ease of the testator, went down stairs into another room, to
attest his will. See, also, *Onions* v. *Tyrer, Id. 343.*

In *Clark* v. *Ward, 1 Bro. P. C. 137,* the witnesses subscribed at a win-
dow in a passage-way, where they could see but part of the bed, and
the testator, lying thereon, could not see them.

In *Tribe* v. *Tribe, 13 Jur. 793, 1 Robt. 775,* the testatrix lay in bed with
the curtains drawn, and her back turned toward the witnesses, who
were signing at a table in the same room.

Mandeville v. Parker.

proof is to the contrary. The most that is said in support of the attestation is, that if the witnesses had signed (standing or sitting) at the west end of the table, the testator might have seen part of their bodies, but could not see their hands. Not only is it not proved that they signed (standing or sitting) at that end of the table, but it appears, very clearly, that they signed sitting at the table, behind the partition, entirely out of view of the testator, where he could not possibly have seen them from the bed.

Mr. Roome, the scrivener, when he first testified, was asked what he did after the testator made his mark to the will. He answered that Mr. Merrick (the other witness) and himself wrote their names as witnesses to the will. The question was then put to him, " Then and there, in the presence of the testator?" and he answered, "No; we had nothing to write our names on, and we wrote them just

In *Wright* v. *Manifold, 1 M. & S. 294*, the testator could not, from his room, have seen into the room where the witnesses signed, without putting his head out into the passage-way which connected the two rooms; although, as the witnesses were retiring from his room, he called upon his attendant to assist him in rising.

In *Ellis's Case, 2 Curteis 395*, the witnesses were in an adjoining room, where they could neither see the testator nor be seen by him, although they were so near that they could hear him breathe.

In *Colman's Case, 3 Curteis 118*, folding doors between the two rooms were open, being tied back, but the table on which the witnesses wrote was so situated that the testator could not possibly have seen it.

In *Norton* v. *Bazett, Dea. & Sw. 259 (5 Am. Law Reg. 52)*, the witnesses were clerks of the testator, and called by him from an outer office into his own, where he was sitting with his back towards the door. The will was written on two separate sheets, the *second* (see *Bond* v. *Seawell, 3 Burr. 1773; Gass* v. *Gass, 3 Humph. 278; Horsford's Case, L. R. (3 P. & D.) 211*) of which he signed, and they, his table being full of papers, took into their room for attestation. When they returned he was standing up, but otherwise relatively in the same position as before, and from which it was impossible for him to have seen them while signing.

In *Kiltick's Case, 3 Sw. & Tr. 578*, the deceased could, by changing her position in bed, have seen the witnesses sign her will in another room, but the proof was that she did not do so.

In *Violette* v. *Therriau, 1 Pug. & Bus. (N. B.) 389*, the testator had been paralyzed, and was, when his will was executed, unable to rise from his bed without assistance. A small table stood at the foot of his bed, and was concealed therefrom by the foot-board of the bed rising above it, so that, although he could see the persons of the witnesses,

Mandeville *v.* Parker.

outside, in the kitchen, on the table, standing right by the
door that enters into the bed-room, not more than eight or
ten feet off; the door was open." To the question, " Could
the testator see you sign your names from where he lay ?"
he replied, "I think not; it was around the door-post of
the kitchen; this kitchen joins the bed-room." When he
was subsequently (more than a month afterwards) recalled,
he said that if he stood at the west end of the table when
he signed, he would have been in open sight of the tes-
tator, but he added that he was not positive whether he
stood there or not, and had no distinct recollection on the
subject. He further said that, if he did stand at that end
of the table, the testator, though he could have seen him,
could not have seen him and Mr. Merrick write. He also
said that Mr. Merrick, when he signed, sat at the front of
the table, near the southwest corner, and that the testator

---

their arms and hands and the paper on which they wrote on the table,
were invisible.

In *Robinson* v. *King, 6 Ga. 589,* the testator signed his will in bed,
and was not able to get up without assistance. The witnesses wrote
their names thereto on a piazza adjoining his room, and about ten feet
from him. There was a door communicating with the room, but their
relative positions were such that they could not see each other.

In *Brooks* v. *Duffell, 23 Ga. 441,* a will was executed by the testator
in bed, towards evening, and, for the sake of seeing better, the wit-
nesses stepped to a door, which, when opened, swung against the side
of his bed, so that, without changing his position, it would have been
impossible for him to see them, and he was too weak to notice any-
thing that was going on.

In *Reed* v. *Roberts, 26 Ga. 294,* the testator, *in extremis,* was lying in a
bed with four high posts, having a counterpane stretched across those
at the head to protect him from the air. After he had signed, the will
was taken behind the head of the bed, to a chest against the wall,
some seven or eight feet distant, and attested. The proof showed that
he was too feeble to change his position without help.

In *Lamb* v. *Girtman, 33 Ga. 289,* the testator signed his will at a
small table in a hallway, and then, being in feeble health, with-
drew to his room adjoining, accompanied by a witness, who returned
to the others, and then they all signed. The testator, when afterwards
noticed by them, was lying in the ordinary attitude on his bed, and in
that position could not have seen the witnesses when signing.

In *Graham* v. *Graham, 10 Ired. 219,* the witnesses went into another
room to sign at a chest standing against the partition, two or three
feet from the open door. The bed in which the testator lay stood also
against the partition, with its head nearly opposite to the chest, so that

Mandeville v. Parker.

could not, he thinks, see him in that place. He also said that, when he drew the will, he sat in the place just mentioned, at the side of the table. While he cannot remember whether he was standing or sitting when he signed, Mr. Merrick testifies positively on the subject. He says that he himself signed sitting at the table, and that he thinks it could not have been possible for any one on the bed on which the testator lay, to see him. He also says that, after he had signed, he rose from the chair and Mr. Roome sat down in it, at the same place, and signed his name there. It is clear, from the testimony, that if the witnesses had sat or stood at the west end of the table, which was within a few inches of the door, though, perhaps, part of their bodies could be seen from the bed, their hands could not; they could not be seen to write. Both witnesses testify, then, that when they signed they were in a room other than that

---

the testator could, by turning his head, see the backs of the witnesses as they sat at the chest writing, but he could not see their faces, arms or hands, nor the paper on which they were writing.

In *Reynolds* v. *Reynolds, 1 Spears 253*, the testator, after being raised to sign his will, sank back in his bed, and the witnesses went to a table in a hall and signed their names, The testator could not see them, as he lay, and although he had strength to rise sufficiently to see them, yet he did not rise.

In *Jones* v. *Tuck, 3 Jones 202*, the testator could not see the witnesses while signing his will in another room, without raising himself up on his elbow, but this the witnesses thought him capable of doing, because they saw him turn himself several times in his bed.

In *Orndorf* v. *Hummer, 12 B. Mon. 619*, the table on which the witnesses wrote stood just behind the head of a lounge on which the testator lay, and four or five feet therefrom. He could not, from his position, have seen the witnesses at all, and it seemed doubtful whether he could, without assistance, have changed his posture.

In *Neil* v. *Neil. 1 Leigh 6*, the testator, when two of the witnesses signed at a table by his bed, lay with his back to them, and his sight was poor and the light in the room dim. He could not rise alone.

In *Boldry* v. *Parris, 2 Cush. 433*, the testatrix and one witness signed in her room, and then that witness took the will into an adjoining room, where it was signed by the other two witnesses, out of the testatrix's sight altogether.

In *Edelen* v. *Hardy, 7 Harr. & Johns. 61*, the testator, after signing, requested the witnesses to retire, and they went into an adjoining room, separated from the other by a plank partition; there was no direct communication between the rooms, nor could testator have possibly seen them. See *Russell* v. *Falls, 3 Harr. & McHen. 457*.

Mandeville v. Parker.

in which the testator lay, and that he could not have seen them when they signed. The object of the provision of the statute that the witnesses shall sign in the presence of the testator, is to prevent substitution and fraud upon him. An attestation made in the same room in which he is, is, *prima facie*, an attestation in his presence. On the other hand, an attestation made in another room is, *prima facie*, not made in his presence. *Neil* v. *Neil*, 1 Leigh 6 ; 1 Greenl. on Ev. (12th ed.) § 272 ; In the goods of Colman, 3 Curt. 118.

In *Graham* v. *Graham*, 10 Ired. 219, the witnesses subscribed out of the testator's room, and in such a situation that, though he could see their bodies as they wrote, he could not see the paper. It was held that it could not, in any proper sense, be said that the signing was done in his presence. See, also, *Jones* v. *Tuck*, 3 Jones (N. C.) 202 ; *Boldry* v. *Parris*, 2 Cush. 433 ; *Downie's Will*, 42 Wis. 66 ; *Hindmarsh* v. *Carlton*, 8 H. of L. Cas. 160 ; *Doe* v. *Manifold*, 1 M. & S. 294, 296 ; *Tribe* v. *Tribe*, 1 Robt. 775 ; *Norton* v.

In *Cornelius's Will*, 14 Ark. 675, attestation in the presence of testator was held to be unnecessary. Also, *Abraham* v. *Wilkins*, 17 Ark. 292.

In a testator's "presence" means not only his corporeal presence, but also that he must be mentally capable of executing a will. *Right* v. *Price*, Doug. 241 ; *Hudson* v. *Parker*, 1 Roberts. 24 ; *Watson* v. *Pipes*, 32 Miss. 451 ; *McGuire* v. *Kerr*. 2 Bradf. 244 ; *Jackson* v. *Moore*, 14 La. Ann. 213 ; *Hall* v. *Hall*, 18 Ga. 40 ; *Aurand* v. *Wilt*, 9 Pa. St. 54.

Whether a witness's subsequent acknowledgment to a testator of an attestation made out of his presence, is sufficient, see *Chase* v. *Kittredge*, 11 Allen 49, reviewing all the prior cases ; *Vaughan* v. *Vaughan*, 13 Am. Law Reg. 735 ; *Downie's Will*, 42 Wis. 66 ; *Duffie* v. *Carridon*, 40 Ga. 122 ; *Hindmarsh* v. *Charlton*, 8 H. of L. Cas. 160.

As to the effect or conclusiveness of an attesting clause, see *Tappen* v. *Davidson*, 12 C. E. Gr. 459 ; *Barnes* v. *Barnes*, 66 Me. 286 ; *Howard's Case*, 5 Mon. 199 ; *Carpenter* v. *Denoon*, 29 Ohio St. 379 ; *Hands* v. *James*, Com. 531 ; *Croft* v. *Pawlet*, 2 Str. 1109 ; *Lloyd* v. *Roberts*, 12 Moore P. C. 158 ; *Crawford* v. *Curragh*, 15 Up. Can. 55 ; *Swinford's Case*, L. R. (1 P. & D.) 630 ; *Ragland* v. *Huntingdon*, 1 Ired. 561 ; *Pool* v. *Pool*, 5 Ala. 12 ; *Hall* v. *Hall*, 18 Ga. 40 ; *Clark* v. *Donnorant*, 10 Leigh 22 ; *Fatheree* v. *Lawrence*, 33 Miss. 622 ; *Deupree* v. *Deupree*, 45 Ga. 415 ; *Chaffee* v. *Baptist Soc.*, 10 Paige 85 ; *Leaycraft* v. *Simmons*, 3 Bradf. 35 ; *Penniman's Case*, 20 Minn. 245 ; and how far an attesting witness may qualify or vary it (*White* v. *Trustees &c.*, 6 Bing. 310 ; *Lucas* v. *Parsons*, 24 Ga. 640 ; *Boyens's Will*, 23 Iowa 354 ; *Dewey* v. *Dewey*, 1 Metc. 349 ; *Barnes* v. *Barnes*, 66 Me. 286 ; *Rose* v. *Allen*, 1 Cold. 23 ; *Jenkins's Will*, 43 Wis. 610 ; *Weld* v. *Sweeney*, 85 Ill. 50 ; *Otterson* v. *Hofford*, 7 Vr. 129).—REP.

Mandeville *v.* Parker.

*Bazett, Dea. & Sw. 259; Goods of Trimnell, 11 Jur.* (*N. S.*) *248.* Though the testator be blind, it must appear that he could have seen the witnesses had he had his eye-sight. *1 Wms. on Ex'rs 93; 1 Jarm. on Wills 75 note.*

The decree of the orphans court will be affirmed.