### Ezra J. Riggs *vs.* Emma L. Riggs & others.

Suffolk. March 30. — June 21, 1883. Field & Devens, JJ., absent.

A testator, at the time he executed his will, was lying on his bed unable to move. His sight was unimpaired, but he could only look upward. The witnesses signed the will at a table, which was in an adjoining room, and nine feet distant from the testator. The door was open, and the table was in the line of vision of the testator if he had been able to look. He could hear all that was said, and knew and understood all that was done, and, after the witnesses had signed the will, it was handed to him, and he read their names as signed, and said he was glad it was done. A codicil to the will, which was executed while the testator was in the same condition, was attested by the witnesses at a table by the side of the bed about four feet from his head. *Held*, that the will and codicil were attested in the "presence" of the testator, within the Gen. Sts. c. 92, § 6.

APPEAL from a decree of the Probate Court disallowing the will and codicil of Jackson Riggs. The case was heard before *C. Allen*, J., on the issues whether the witnesses to the

will and codicil, or to either of them, attested and subscribed the same in the presence of the testator, within the meaning of the statute. The will was executed on November 15, 1881, and the codicil, which confirmed the will except in one particular, was executed on December 8, 1881. The judge ordered a decree to be entered that the will and codicil be admitted to probate, and the case remitted to the Probate Court for further proceedings. The contestant appealed; and the judge reported the case for the determination of the full court, in substance as follows:

The witnesses to the will saw the testator sign it, and were in the room with him at the time; and they signed it as witnesses in the room adjoining that in which the testator was, and at a distance of about nine feet from him, the door being open. The testator was in bed, and in such a position that, if he had been able to turn his head round, he might, by so turning it, have seen the witnesses when they signed their names, and also the will itself, unless during a part of the time, when their bodies obstructed the view; but, from the effect of an injury which he had received, he could not, in point of fact, turn his head sufficiently to see them and the will at the time when they were signing their names as witnesses.

The witnesses to the codicil did not see the testator sign it, but he acknowledged it to be his signature in their presence, and they signed the codicil as witnesses in the same room with him, and within four feet of his head, and at a table which stood near the head of his bed, and on one side, and a little farther back than directly opposite to his head. By turning his head, if he had been able to do so, he could have seen them when they signed their names, and also the codicil itself; but, in point of fact, from the effect of said injury, he was not able to turn his head sufficiently to see them or the codicil at the time when they were signing their names as witnesses.

After the witnesses had signed their names to the original will, it was handed to the testator as he was lying upon the bed, and he read their names as signed, and said he was glad it was done. At the times when the witnesses signed their names to both will and codicil, the testator was conscious, and could hear all that was said, and knew and understood all that was done.

Upon the evidence, there was no reason to suspect any fraud upon the testator in respect to the execution or attestation of the will, or any undue influence upon him; and it was conceded that he was of sufficient mental capacity.

*L. Cowan*, for the contestant, cited *Clerk* v. *Ward*, 4 Bro. P. C. 70, 71; *Edleston* v. *Speake*, Holt, 222, and 3 Mod. 259; *Casson* v. *Dade*, 1 Bro. C. C. 99; *Machell* v. *Temple*, 2 Show. 288; *Broderick* v. *Broderick*, 1 P. Wms. 239; *Tribe* v. *Tribe*, 13 Jur. 793; *Doe* v. *Manifold*, 1 M. & S. 294; *Ellis's goods*, 2 Curt. Ecc. 395; *Colman's goods*, 3 Curt. Ecc. 118; *Norton* v. *Bazett*, Dea. & Sw. 259; *Killick's goods*, 3 Sw. & Tr. 578; *Doe* v. *Therriau*, 1 Pugs. & Bur. (N. B.) 389; *Dewey* v. *Dewey*, 1 Met. 349; *Boldry* v. *Parris*, 2 Cush. 433; *Edelen* v. *Hardey*, 7 Har. & J. 61; *Neil* v. *Neil*, 1 Leigh, 6; *Graham* v. *Graham*, 10 Ired. 219; *Jones* v. *Tuck*, 3 Jones (N. C.) 202; *Reynolds* v. *Reynolds*, 1 Speers, 253; *Robinson* v. *King*, 6 Ga. 539; *Brooks* v. *Duffell*, 23 Ga. 441; *Reed* v. *Roberts*, 26 Ga. 294; *Lamb* v. *Girtman*, 33 Ga. 289; *Orndorff* v. *Hummer*, 12 B. Mon. 619; *Gass* v. *Gass*, 3 Humph. 278.

*I. W. Richardson*, in support of the will, was not called upon.

MORTON, C. J. The only question presented by this report is as to the sufficiency of the attestation by the witnesses to the will and codicil of the testator.

The statutes provide that, in order to be valid, a will or codicil must be signed by the testator, or by some person in his presence and by his direction, " and attested and subscribed in his presence by three or more competent witnesses." Gen. Sts. c. 92, § 6. Pub. Sts. c. 127, § 1.

It appeared at the hearing that the testator had received a severe injury, and was lying upon his bed unable to move. His sight was unimpaired, but he could only look upward, as he was incapable of turning his head so as to see what took place at his side. As to the codicil, it appeared that it was attested and subscribed by the three witnesses in the same room with the testator, at a table by the side of the bed about four feet from his head. The contestant contends that this attestation was insufficient, because the testator did not and could not see the witnesses subscribe their names. It has been held by some courts, upon the construction of similar statutes, that such an

attestation is not sufficient. See *Aikin* v. *Weckerly*, 19 Mich. 482, 505. *Downie's will*, 42 Wis. 66. *Tribe* v. *Tribe*, 13 Jur. 793. *Jones* v. *Tuck*, 3 Jones (N. C.) 202. *Graham* v. *Graham*, 10 Ired. 219. But we are of opinion that so nice and narrow a construction is not required by the letter, and would defeat the spirit, of our statute.

It is true that it is stated, in many cases, that witnesses are not in the presence of a testator unless they are within his sight; but these statements are made with reference to testators who can see. As most men can see, vision is the usual and safest test of presence, but it is not the only test. A man may take note of the presence of another by the other senses, as hearing or touch. Certainly, if two blind men are in the same room, talking together, they are in each other's presence. If two men are in the same room, conversing together, and either or both bandage or close their eyes, they do not cease to be in each other's presence.

In England, where the tendency of the courts has been to construe the statute with great strictness, it has always been held that a blind man can make a valid will, although of course he cannot see, if he is sensible of the presence of the witnesses through the other senses. *Piercy's goods*, 1 Rob. Ecc. 278. *Fincham* v. *Edwards*, 3 Curt. Ecc. 63. It would be against the spirit of our statutes to hold that, because a man is blind, or because he is obliged to keep his eyes bandaged, or because, by an injury, he is prevented from using his sight, he is deprived of the right to make a will.

The statute does not make the test of the validity of a will to be that the testator must see the witnesses subscribe their names; they must subscribe " in his presence; " but in cases where he has lost or cannot use his sense of sight, if his mind and hearing are not affected, if he is sensible of what is being done, if the witnesses subscribe in the same room, or in such close proximity as to be within the line of vision of one in his position who could see, and within his hearing, they subscribe in his presence; and the will, if otherwise duly executed, is valid. In a case like the one before us, there is much less liability to deception or imposition than there would be in the case of a blind man, because the testator, by holding the will before his

eyes, could determine by sight that the will subscribed by the witnesses was the same will executed by him. We are of opinion, therefore, that the codicil was duly attested by the witnesses.

· The facts in regard to the attestation of the original will do not materially differ from those as to the codicil. The witnesses signed the will at a table nine feet distant from the testator, which was not in the same room, but near the door in an adjoining room. The door was open, and the table was within the line of vision of the testator, if he had been able to look, and the witnesses were within his hearing. The testator could hear all that was said, and knew and understood all that was done; and, after the witnesses had signed it, and as a part of the *res gestæ*, it was handed to the testator, and he read their names as signed, and said he was glad it was done. For the reasons before stated, we are of opinion that this was an attestation in his presence, and was sufficient.

The result is, that the decree of the justice who heard the case, admitting the will and codicil to probate, must be affirmed.

*Decree affirmed.*