JAMES M. RAYMOND, executor, *vs.* EVELINA F. WAGNER.

Middlesex.    January 24, 1901. — March 7, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

A testatrix lay in bed in one room while two of the subscribing witnesses to a codicil to her will signed in another room on the opposite side of a narrow entry, the doors of both rooms being open. The witnesses sat at a table just inside the open door of their room, and the bed of the testatrix was in such a position that by rising slightly she could have seen the witnesses as they signed, but it did not appear whether or not she had the power thus to raise herself. Immediately after the signing by the witnesses, the codicil was shown to the testatrix. *Held,* that on these facts the witnesses could be found to have subscribed the codicil in the presence of the testatrix.

APPEAL from a decree of the Probate Court for the County of Middlesex disallowing a codicil to the will of Eliza J. Jones, and issuing letters testamentary to James M. Raymond, the appellee, as executor. The codicil simply appointed the appellant, Evelina F. Wagner, executrix in place of the appellee. Petition

for the allowance of the codicil filed in the Probate Court August 7, 1897.

The case was heard by *Holmes*, C. J., who reserved it for the consideration of the full court upon the following report :

" The only question tried before me was whether the codicil was signed by two of the witnesses in the presence of the testatrix. She lay in bed in one room, two of the witnesses signed in another on the other side of an entry, and the codicil immediately thereafter was shown to the testatrix. The doors were open. The distance from door post to door post diagonally along the line of vision was about nine and one half feet. The table at which the witnesses sat was just inside the door of their room, and the distance from the table to the bed of course was a few feet greater. The evidence as to the exact positions of the table and of the bed was conflicting and somewhat uncertain. I was satisfied, however, that the doors were open, and that the bed was in such a position that the testatrix, by rising slightly, her legs remaining in the same place, could have seen into the other room and could have seen the witnesses as they signed. Whether she could have raised herself so as to see is more doubtful. I did not find that she could have done so. I ruled that these facts did not exclude a finding that the codicil was witnessed in the presence of the testatrix, and I found as matter of fact and also ruled as matter of law that the witnesses signed in her presence."

If the ruling was right, the codicil was to be established, otherwise such decree to be entered as might seem proper to the full court.

*A. S. Davis*, (*W. M. Noble* with him,) for the appellant.

*G. A. Brown*, for the appellee.

MORTON, J. This is an appeal from the disallowance by the Probate Court of an instrument offered as a codicil to the will of Eliza J. Jones. The report of the Chief Justice by whom the case was heard states that the only question that was tried was the question, " whether the codicil was signed by two of the witnesses in the presence of the testatrix." He ruled that the facts as found by him " did not exclude a finding that the codicil was witnessed in the presence of the testatrix," and found as matter of fact and ruled as matter of law that the witnesses

signed in the presence of the testatrix. The question is whether he was bound to find that the witnesses did not subscribe in her presence.

It appears that the testatrix lay in bed in one room and the two witnesses signed in another on the other side of an entry and that immediately thereafter the codicil was shown to the testatrix. The doors between the two rooms were open and the distance from door post to door post diagonally along the line of vision was about nine and one half feet. The table at which the witnesses sat was just within the door of their room, and the bed on which the testatrix lay was a few feet from the door of her room. The bed was in such a position that the testatrix by raising herself slightly from the hips could see into the room where the witnesses were and could see the witnesses as they signed, that is as we understand could see them in the act of writing their names upon the paper. It was doubtful whether the testatrix could have raised herself. It is stated that it was not found that she could.

The case closely resembles *Riggs* v. *Riggs*, 135 Mass. 238. The witnesses and the testatrix in this case were a few feet farther apart than the witnesses and the testator were in that case. The rooms in that case adjoined, while in this they were separated by an entry. But the witnesses were in the line of vision of the testatrix in this case, and by slightly raising herself she could have seen them as they signed, as the testator could have done in that case by slightly turning his head if he had been able to. It is not expressly found as it was in that case, that the testatrix was conscious and " could hear all that was said and knew and understood all that was done." But from the manner in which the case is reported, it is to be assumed, we think, that all facts other than those stated in the report were found in favor of the validity of the codicil, and therefore that the testatrix was conscious and knew and heard and understood what was done. The intervening entry was not, in view of her position and that of the witnesses, an obstacle to her sight. And when once the step has been taken that subscribing witnesses, though in another room, may still be in the presence of the testator, we do not see how it can be held that the fact that they subscribed in another room separated by an entry from

that in which the testator was, is, of itself, conclusive that they did not subscribe in his presence. Whether in such a case they are to be regarded as subscribing in his presence depends we think on whether the testator knew and understood and was conscious of what they were doing and but for some physical infirmity which did not otherwise affect him could have seen or heard what took place. Otherwise it would follow that there could be no such thing as an attestation of a will by subscribing witnesses in the presence of a person who was blind. If the position of the subscribing witnesses and of the testator and their proximity to him are such that but for some physical infirmity which did not otherwise affect him he could see or hear what they were doing, and if he was conscious of and knew and understood what took place, then we think that the subscribing witnesses are to be regarded as subscribing in his presence. It is not the matter of juxtaposition merely but the result as a whole that is to be looked at. And it seems to us that on the facts as found the two subscribing witnesses must be regarded as having subscribed in the presence of the testatrix. See *Riggs* v. *Riggs, ubi supra,* and *Cunningham* v. *Cunningham,* 80 Minn. 180. *Cook* v. *Winchester,* 81 Mich. 581. *Hopkins* v. *Wheeler,* 21 R. I. 533.

It is to be observed that, beyond the fact that the rooms were separated by an entry, nothing appears as to the relation of the rooms to each other. It is possible that they were more closely connected in actual use than that fact would seem to imply. Certainly the mere fact that the subscribing witnesses were twelve or fifteen feet from the testatrix would not of itself prevent them from being in her presence. A case might be conceived where the subscribing witnesses might be in the line of vision of the testator' but at such a distance that it would be plain that they could not be regarded as being in his presence. But that is not the case here.

*Codicil established ; decree accordingly.*