**BULLOCK et al. v. MOREHOUSE et al.**

Court of Appeals of District of Columbia.
Submitted April 6, 1927. Decided
May 2, 1927.

No. 4537.

1. **Wills** ☞118—Will need not be signed by testator in presence of subscribing witnesses, if before they sign testator acknowledges to them that he has executed it (Code, § 1626).

Under Code, § 1626, requiring wills to be in writing and signed by the testator, and attested and subscribed in his presence by at least two credible witnesses, it is not essential to valid execution of will that subscribing witnesses see testator sign will, or see signature on will, if in fact, before they sign, tes-

19 F.(2d)—45

tator acknowledges to them that he has executed it.

2. **Courts** ☞93(1)—Very cogent reasons should be presented before court will modify rule of property long followed and approved by United States Supreme Court.

Very cogent reasons should be presented before court will modify or change a rule of property followed for a long period of time, particularly where it has been approved in substance by the Supreme Court of the United States.

3. **Wills** ☞123(5)—Testatrix need not have actually seen subscribing witnesses sign; statute being satisfied if she was in position to have seen, had she been so disposed (Code, § 1626).

In will contest, requested charge that, for attesting witnesses to have signed "in the presence of" the testatrix, she must have been able without substantially changing her position to see the making of the signature of each witness, *held* properly refused; Code, § 1626, being satisfied if testatrix understood what witnesses were doing, and could, if so disposed, have seen them while signing.

4. **Wills** ☞302(6)—Due execution of holographic will held sufficiently shown (Code, § 1626).

Proponents of holographic will *held* to have sufficiently established due execution, under Code, § 1626.

5. **Wills** ☞289—Presumption that will was signed when written is greater in case of holographic will.

The presumption that a will was signed when written has greater strength when will is holographic than when paper has been prepared by another person.

Appeal from Supreme Court of District of Columbia.

Walter L. Bullock and others filed a caveat to will of Ann Eliza Bullock, which was opposed by Marion E. Morehouse and another. From a judgment for proponents, caveators appeal. Affirmed.

E. F. Colladay and J. C. McGarraghy, both of Washington, D. C., for appellants.

W. G. Johnson and P. B. Morehouse, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District of Columbia admitting to probate, as the will of Ann Eliza Bullock, a paper writing dated April 6, 1925.

The will was admitted to probate on November 5, 1925, upon formal proof of its proper execution by the testimony of the subscribing witnesses. On February 3, 1926,

a caveat was filed, alleging mental incapacity, fraud, coercion, duress, and improper execution. At the close of the evidence, the court, without objection, directed a verdict in favor of the proponents upon every issue save the last, there being no evidence to support the others. The only issue here, therefore, relates to the execution of the will.

Under the terms of the will the estate, consisting of about $1,800 in personalty and real estate in Illinois of unascertained value, was given to the nearest relative of the testatrix, her sister; the caveators being the children of a brother who predeceased her.

The testatrix, a university graduate and former high school teacher, was a resident of the District of Columbia, but at the time of the execution of the will was visiting the subscribing witnesses, the Misses Neill, at Norman, Okl. She made known to one of them her wish to consult a lawyer, and a Mr. Luttrell, a member of the state Senate of Oklahoma, was recommended to her. Thereupon, in the forenoon of April 6, 1925, Miss Bullock called upon Mr. Luttrell, exhibited to him the will here in controversy, and asked *his advice as to whether it was in correct form,* and whether, as drawn, it expressed her intentions as made known to him. To both inquiries he gave an affirmative answer. The entire will, including the signature of Miss Bullock and the attestation clause, was *in Miss Bullock's handwriting, according to* her statement to Mr. Luttrell and the testimony of the subscribing witnesses. At noon of that day the testatrix made known to the Misses Neill that she had a will for them to sign, "which they were to sign at dinner in the evening." About 6 o'clock in the evening Miss Bullock brought the will into the breakfast room of the house; that room being an alcove of the kitchen. Miss Irma Neill was getting dinner, and Miss Alma Neill setting the table. It is undisputed that Miss Bullock then informed them that it was her will, which she wished them to witness. It also is undisputed that both witnesses signed the will upon that occasion; the second witness signing within 15 minutes or less after the first.

At the request of Miss Bullock, Miss Alma Neill retained possession of the will, and, after Miss Bullock left for Washington, placed it in her own bank box. Upon the death of Miss Bullock, the Misses Neill took *the will in its sealed envelope to Mr. Lut-* trell, who, after reading it to them, mailed it to the proper parties in Washington. On August 25, 1925, a petition for probate was

filed. A commission then issued from the court to Miss Hyla Ford, a notary public at Norman, Okl., to take by interrogatories the depositions of the Misses Neill, the subscribing witnesses. These questions were read to each witness by the notary, and each testified that Miss Bullock signed the will in her presence, declaring the same to be her last will and testament; that each signed as a witness at her request, and in her presence, and in the presence of the other. Each witness signed and made oath to her deposition, and these depositions were duly returned to the court, and duly published by the register of wills and clerk of the probate court. On November 5, 1925, the court passed an order admitting the will to probate.

On January 16, 1926, Walter L. Bullock, one of the caveators, a resident of Dodge City, Kan., went to Norman, Okl., and there interviewed the Misses Neill, the subscribing witnesses. On February 3, 1926, the caveat was filed and on March 26th, following, the proponents of the will proceeded to take the depositions of the Misses Neill. The day preceding the taking of these depositions, Bullock again interviewed one of the subscribing witnesses. The testimony then given by these witnesses differed from that given by them under the previous commission, in particulars presently to be mentioned. On April 19th, the testimony of these witnesses again was taken, on behalf of the caveators, and again it differed from that given upon previous occasions. All three depositions were introduced in evidence without objection.

The testimony of the subscribing witnesses in their second and third depositions was to the effect that, while Miss Bullock declared the instrument to be her last will, she did not sign it in their presence. One of these witnesses saw Miss Bullock "make her seal" on the same line as her signature, which both testified was in her handwriting. There was testimony from one of the attesting witnesses, from which the jury might have found that Miss Bullock did not actually see the witness sign her name to the will, although the evidence was ample to support a finding that she was in a position to see the witness when she signed.

The Misses Neill naturally were asked to explain why they made the statements in their first depositions. One of them testified: "I was called in after my teaching hours, and received nothing for it, and called in after working hours, and Miss Ford (the notary) just asked us to sign those things, and we

did." The testimony of the other subscribing witness was that, "as she remembers it, Miss Ford read them [the interrogatories] to her; she treated the same as a routine matter, without giving much attention to the facts that she was being asked about." It was not surprising that such explanations from intelligent witnesses did not prove persuasive with the jury.

[1] Prayers submitted by the caveators, and refused by the court, sought to have the jury instructed that, in addition to the signing of the will by the testatrix, the subscribing witnesses must either have seen the testatrix sign, or have seen her signature on the paper before they signed, or have known of their own knowledge that the signature was there. The instructions granted at the request of the caveatees were to the effect that it is not essential to a valid execution by a testatrix that the subscribing witnesses see her sign the will, or see her signature on the will, if in fact the testatrix signs before the subscribing witnesses, and, before they sign, acknowledges to them that she has executed it, and that this acknowledgment may be in any form of words that enables the witnesses to understand that the paper is her act.

Section 1626 of our Code provides that "all wills and testaments shall be in writing and signed by the testator, or by some other person in his presence and by his express directions, and shall be attested and subscribed in the presence of the said testator by at least two credible witnesses. * * *" Prior to the enactment of this Code, the statute in force here was the Act of Assembly of Maryland of 1798 (Laws 1798, c. 101, subc. 1, § 4), which differed from the provisions of our Code only in the requirement of at least three attesting witnesses. The case of In re Porter, 9 Mackey (20 D. C.) 493, involved the interpretation of the Maryland act. The material facts of that case, decided in April of 1892, and followed in this jurisdiction during the intervening 35 years, were these:

The will involved had three witnesses, Alden and Thomas, friends of Admiral Porter, the testator, and Wilkes, a servant. The paper bore an attestation clause signed by all three witnesses, but the proof showed that, while Alden and Thomas saw Admiral Porter sign the will, Wilkes, the third witness, was not present. Wilkes testified that Admiral Porter summoned him to the room where the admiral transacted business, and that no one else was present; that on his entrance the testator pointed to a paper on a table and said, "Sign that paper;" that thereupon the witness signed the paper pointed out to him and left the room; that the paper shown him in court was the one he signed; that at the time of his signature there was no acknowledgment of the nature of the paper, or of the signature of Admiral Porter, nor could the witness say whether such signature then was on the paper. The court, after an exhaustive review of the authorities, found that the will was properly executed, quoting with approval from White v. Trustees of British Museum, 6 Bing. 309, where it was said:

"It has been held, in so many cases, that it must now be taken to be settled law, that it is unnecessary for the testator actually to sign the will in the presence of the three witnesses who subscribe the same, but that any acknowledgment before the witnesses that it is his signature, or any declaration that it is his will, is equivalent to an actual signature in their presence, and makes the attestation and subscription of the witnesses complete. * * * When, therefore, we find the testator knew this instrument to be his will; that he produced it to the three persons and asked them to sign the same; that he intended them to sign it as witnesses; that they subscribed their names in his presence, and returned the same identical instrument to him, we think the testator did acknowledge in fact, though not in words, to the three witnesses that the will was his."

After its analysis of the White Case and many other authorities, the court said: "We accept as authoritative the line of cases which we have cited. They show that, within the meaning of the statute of 29 Charles II, attestation is properly made, either when the witness has seen the testator sign the instrument, or has heard him, after it has been signed, acknowledge that the act was his. They show also that this acknowledgment may be conveyed either by words or by acts which indicate to the witness that he is called upon to act in the capacity of witness, and to attest something which is treated by the testator as his act."

In Kelly v. Moore, 22 App. D. C. 9, a will case controlled by the Maryland act, the third witness was not present at the execution and did not sign the attestation clause, although he did sign a certificate of his own on the will at the request of the testator. This certificate set forth that the testator acknowledged the paper as his last will and testament, and the witness further certified, not that the testator had acknowledged his

signature, but that the signature "is in the proper handwriting of the said William Thomson," the testator. This will was sustained, both in this court and in the Supreme Court of the United States. See Keely v. Moore, 196 U. S. 38, 25 S. Ct. 169, 49 L. Ed. 376, where it was said: "The statute did not require that the devisor should sign the will in the presence of the witness, but that the witness should sign in the presence of the testator."

Appellants cite Notes v. Doyle, 32 App. D. C. 413, in an effort to show that the rule in the Porter Case has been modified; but evidently the fact is overlooked that the Porter Case is there cited and quoted from with approval.

[2] Counsel for appellants also have brought to our attention decisions from certain other jurisdictions in which the rule is stated somewhat differently from that in the Porter Case, but we do not consider it necessary to discuss them, for very cogent reasons should be presented to induce a court to modify or change a rule of property followed for such a long period of time, and particularly where it has been approved in substance by the Supreme Court of the United States. Certainly no such reasons are presented here.

[3] In another prayer, the caveators sought to have the jury instructed that, to constitute a signing by the attesting witnesses "in the presence of" the testatrix, the testatrix must have been able, without substantially changing her position, to see the making of the signature of each witness. The court refused this prayer, and instructed the jury that, if the witnesses signed at the request of the testatrix, who knew they were signing her will as witnesses, and she was in a position where she could see the witnesses if she chose to look at them, such a signing would be a signing in her presence.

The object of the provision of the statute requiring that the witnesses sign in the presence of the testator is to prevent imposition. The requirement of the statute, therefore, is met if the testator understands what the witnesses are doing when they affix their names to his will, and may, if so disposed, see them while signing. It is the result as a whole that controls, and not the mere matter of juxtaposition.

In Healey v. Bartlett, 73 N. H. 110, 59 A. 617, 6 Ann. Cas. 413, the court thus stated the rule: "It is not necessary that he [the testator] should actually see the witnesses for them to be in his presence. They are in his presence whenever they are so near him that he is conscious of where they are and of what they are doing, through any of his senses, and are where he can readily see them if he is so disposed."

In Riggs v. Riggs, 135 Mass. 238, 46 Am. Rep. 464, the testator had received a severe injury and was lying on his bed, unable to move, when the witnesses signed the will. The contestants argued that the attestation was insufficient, because the testator did not and could not see the witnesses subscribe their names. The court observed that, as most men can see, vision is the usual and safest test of presence, but not the only test, and that in England, where the tendency of the courts has been to construe the statute with strictness, it has always been held that a blind man may make a valid will, if he is sensible of the presence of the witnesses through other senses. The court then said: "The statute does not make the test of the validity of a will to be that the testator must see the witnesses subscribe their names; they must subscribe 'in his presence;' but in cases where he has lost or cannot use his sense of sight, if his mind and hearing are not affected, if he is sensible of what is being done, if the witnesses subscribe in the same room, or in such close proximity as to be within the line of vision of one in his position who could see, and within his hearing, they subscribe in his presence; and the will, if otherwise duly executed, is valid."

To the same effect are Raymond v. Wagner, 178 Mass. 315, 59 N. E. 811, and In re Claflin's Will, 73 Vt. 129, 50 A. 815, 87 Am. St. Rep. 693.

In the present case, there is no question as to the identity of the instrument signed by the witnesses, or of the signature of the testatrix, or of the signatures of the witnesses. It would have been going far, after one subscribing witness had revised her recollection as to what actually took place when she signed, to have instructed the jury that the testatrix must actually have seen the witnesses write their names on the instrument. The instruction as given correctly stated the law.

[4, 5] The further contention is made, on behalf of appellants, that the trial court should have directed the jury to find that the proponents of the will had not sustained the burden of proof to establish proper execution of the instrument. This assignment is without merit. The fact that this is a holographic will is of importance. The presumption that it was signed when written, therefore, is of greater strength than would have been the case, had the paper been prepared by another

person as a mere unfinished instrument. See In re Dougherty's Estate, 168 Mich. 281, 134 N. W. 24, 38 L. R. A. (N. S.) 161, Ann. Cas. 1913B, 1300, where it was said: "Will the facts that the witnesses did not see the testator sign his name, and did not see his name on the paper, and that he did not expressly say to them that he had signed it, as a matter of law, overcome the presumption that it was signed when presented to the witnesses, under the circumstances? We think not."

In the present case, the entire will, including the attestation clause, was in the handwriting of the testatrix, who expressly declared to the witnesses that she wished them to witness it. They did witness it, one of them took charge of the instrument, and there is no doubt that it then bore the signature of the testatrix. There was ample evidence, therefore, to sustain the verdict and judgment.

The judgment is affirmed, with costs.
Affirmed.